# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| VOTEAMERICA; VOTER PARTICIPATION CENTER; and CENTER FOR VOTER INFORMATION,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia; REBECCA SULLIVAN, in her official capacity as Vice Chair of the State Election Board; and DAVID WORLEY, MATTHEW MASHBURN, and ANH LE, in their official capacities as members of the STATE ELECTION BOARD,<br>　　　　　　　　　　　Defendants. | Case No. 1:21-cv-01390-JPB<br>Judge J.P. Boulee |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE

Plaintiffs VoteAmerica, Voter Participation Center, and Center for Voter Information respectfully submit this memorandum in opposition to the Motion to Intervene as Defendants filed by the Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee, and Georgia Republican Party, Inc. ("Movants"), ECF No. 25.

Movants have not shown they are entitled to intervene either as of right or permissively. Movants identify no legally cognizable interest in the three challenged

provisions of Section 25 of Senate Bill 202 ("SB 202") that are at issue in this case. To the extent such an interest exists, Movants fail to explain how they would be impaired absent intervention or why Defendants Secretary of State Brad Raffensperger, State Elections Board Vice Chair Rebecca Sullivan, and State Elections Board Members David Worley, Matthew Mashburn, and Anh Le (all sued in their official capacities) are incapable of adequately representing those interests. Moreover, permissive intervention would unduly complicate this litigation and lead to unnecessary motion practice, resulting in further delays and prejudice to Plaintiffs. This Court should deny Movants' request to intervene as defendants in this matter.

## LEGAL STANDARD

Parties seeking intervention as of right under Federal Rule of Civil Procedure 24(a)(2) must "demonstrate that: (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit." *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 290 (11th Cir. 2020) (quoting *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017)). Putative intervenors bear the burden to establish all four elements to intervene as a

matter of right. *Id*. at 291 (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).

Parties seeking permissive intervention under Rule 24(b)(2) must show: "(1) [their] application to intervene is timely; and (2) [their] claim or defense and the main action have a question of law or fact in common." *Chiles*, 865 F.2d at 1213. Even if both of those requirements are met, the Court has the discretion to deny intervention that will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## THIS LAWSUIT

This lawsuit is one of six that have been filed in this Court challenging various aspects of SB 202. *See New Georgia Project v. Raffensperger*, No. 1:21-cv-01229-JPB (N.D. Ga.); *Sixth District of the African Methodist Episcopal Church v. Kemp*, No. 1:21-cv-01284 (N.D. Ga.); *Asian Americans Advancing Justice–Atlanta v. Raffensperger*, No. 1:21-cv-01333 (N.D. Ga.); *Georgia State Conference of the NAACP v. Raffensperger*, No. 1:21-cv-01259 (N.D. Ga.); *The Concerned Black Clergy of Metropolitan Atlanta, Inc. v. Raffensperger*, No. 1:21-cv-01728-JPB (N.D. Ga.). The Movants have filed nearly identical motions to intervene in five of the cases. But this case is different from the other cases—a fact that the Movants completely ignore in their brief.

Plaintiffs are nonprofit, nonpartisan organizations that engage in political speech and expression by encouraging eligible Georgians to vote absentee and providing them with the information and resources to do so. *See* Compl. (ECF No. 1) at ¶¶ 10, 17, 26–27. Plaintiffs challenge three provisions of SB 202 dealing with the distribution of absentee ballot applications: (1) a prohibition on providing prefilled absentee ballot applications to registered voters, even where the voters have provided the information themselves, *id.* ¶¶ 8, 74–85; (2) a misleading disclaimer that Plaintiffs are required to attach to any absentee ballot application that they distribute, *id.* ¶¶ 8, 64–73; and (3) a $100.00 penalty for every absentee ballot application sent to an individual who has already requested, received, or cast an absentee ballot and the corresponding obligation to monitor certain lists to ensure that such duplicate applications are not distributed, *id.* ¶¶ 8, 86–103. The Movants' brief does not address these three provisions or state how these provisions benefit them as Republicans.

Lastly, unlike the other lawsuits, Plaintiffs' challenges to these three specific provisions of SB 202 are based on their First Amendment rights of speech and association. Nowhere in their brief do Movants address how Plaintiffs' First Amendment challenges, if upheld, would adversely affect them, their candidates or "their" voters.

## ARGUMENT

Movants have failed to carry their burden to intervene either as of right or permissively. Movants fall far short in articulating what, if any, legally cognizable interest they have to intervene in *this specific lawsuit* involving *these three challenged provisions* of SB 202. Instead, Movants have merely parroted the same generalized or thinly veiled partisan interests here as they have in separate cases before this Court that challenge different parts of SB 202. Movants' shortcomings in articulating any sufficient interest are outdone only by their additional failure to show how this action impairs any purported interests or why the existing Defendants do not adequately represent their interests in the ultimate outcome of this case.

Allowing permissive intervention is likewise unwarranted because Movants will delay or prejudice the adjudication of this matter. Indeed, the stark deficiencies contained in their proposed Answer, *see* ECF No. 25-2, demonstrates that Movants' intervention would immediately (and needlessly) complicate and delay these proceedings and would result in the filing of a motion to strike.

### I. Movants are not entitled to intervention as of right under Rule 24(a).

#### A. Movants have not established any specific or protected interest in this case.

Movants fail to identify any particularized or protected interest implicated in this case. Movants have the burden to identify a "significantly protectable interest,"

*see Donaldson v. United States*, 400 U.S. 517, 531 (1971), that is "direct, substantial, [and] legally protectable." *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). "[G]eneralized grievances do not amount to sufficient interests[.]" *Burke*, 833 F. App'x at 292 (citing *Chiles*, 865 F.2d at 1212–13). Movants' generic interests in participating in other cases before this Court related to SB 202 are at best dubious, but their apparent interest in the "subject of th[is] action" is virtually nonexistent. *See* Fed. R. Civ. P. 24(a)(2); *see also Biological Processors of Alabama, Inc. v. N. Georgia Env't Servs., Inc.*, No. 08-cv-331, 2009 WL 10688032, at *2 (N.D. Ala. Dec. 7, 2009) (denying intervention when "proposed intervenors have failed to identify any recognized interest in *this* case" (emphasis in original)).

*First*, because Movants' memorandum is nearly identical to their memoranda submitted in other SB 202 cases, they convey nothing about their particular interests in this lawsuit. The other cases before this Court challenge numerous aspects of SB 202, involve differently situated parties, and allege entirely separate claims. Plaintiffs here, in contrast, seek to protect their First Amendment rights[1] against the unconstitutional restrictions in only three discrete provisions of SB 202. *See* Compl.

---

[1] Plaintiffs' Fifth Claim for Relief further alleges that vagueness deficiencies in the challenged provisions also impinge Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment. Compl. ¶¶ 154–55.

¶¶ 62–63, 103. Despite this foundational difference between the cases, Movants make the same intervention arguments that they made in these other, distinct cases.

Between this lawsuit and the New Georgia Project litigation, for example, Movants' assertions of their interests are indistinguishable. *See* Memoranda Comparison Results, Ex. A.[2] In both cases, Movants summarily argue in scattershot fashion that they have interests in "ensuring that the State's election procedures are fair and reliable"; "promoting their chosen candidates and protecting the integrity of Georgia's elections";[3] and some overarching and undefined "inherent and intense interest in elections." *See id.* at 11–13. But these conclusory interests have no articulated or plausible connection to the challenged SB 202 restrictions on

---

[2] The same can be said for Movants' briefing in three other SB 202 cases. *See* Motion to Intervene at 5-6, *Sixth District of the African Methodist Episcopal Church*, No. 1:21-cv-01284 (N.D. Ga. Apr. 12, 2021) (ECF No. 38-1); Motion to Intervene at 5-6, *Asian Americans Advancing Justice–Atlanta*, No. 1:21-cv-01333 (N.D. Ga. Apr. 9, 2021) (ECF No. 20-1); Motion to Intervene at 5-6, *Georgia State Conference of the NAACP*, No. 1:21-cv-01259 (N.D. Ga. Apr. 12, 2021) (ECF No. 19-1).

[3] To support this asserted interest, Movants have substantially overstated the effect of Judge Jones's decision in *Black Voters Matter Fund v. Raffensperger*, No. 1:20-cv-04869 (N.D. Ga.). *See* ECF No. 25-1 at 2, 5. Judge Jones had not "found" that the proposed intervenors in that case proved this interest to establish mandatory intervention, as Movants here suggest. *See id.* at 5. The Court did not grant mandatory intervention at all, merely recounting that the proposed intervenors there had "asserted that Plaintiffs' requested relief would undermine their interests in promoting their chosen candidates and protecting the integrity of Georgia's elections," and ultimately allowing *permissive intervention* because of a "liberally construed 'common fact or defense' standard." *See* Order at 5-6, *Black Voters Matter Fund v. Raffensperger*, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020) (ECF No. 42).

Plaintiffs' free speech and association rights in *this case*, leaving Plaintiffs and the Court in the dark about what interest Movants seek to vindicate through their intervention here. The Rule 24(a) burden on proposed intervenors to prove that they have "direct, substantial, [and] legally protectable" interests "relating to the subject of the action" would be rendered meaningless if it countenanced Movants' duplicated and conclusory stated interests here. *See Purcell*, 85 F.3d at 1512 (citations omitted).

*Second*, Movants' interests are also insufficient because they are both overgeneralized and non-cognizable. "[A]n intervenor's interest must be a particularized interest rather than a general grievance." *Chiles*, 865 F.2d at 1212. An alleged interest "shared with . . . all citizens" is "so generalized [that] it will not support a claim for intervention of right." *Athens Lumber Co., Inc. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982); *accord United States v. Alabama*, No. 2:06-cv-392-WKW, 2006 WL 2290726, at *4 (M.D. Ala. Aug. 8, 2006) (denying intervention to Democratic Party representatives because their "alleged interest could be claimed by any voter" and thus is "only of a general—not a direct and substantial—concern").

Movants' stated interest in promoting "fair and reliable" elections, "the integrity of the election process," and "orderly administration" of the system, ECF No. 25-1 at 5–6, are objectives so general that any Georgia citizen could articulate

them as an interest purportedly justifying intervention. That Movants organize and run candidates in Georgia's elections is no answer because all citizens also have an interest in supporting candidates and running for office—indeed, many do so. *See, e.g.*, Order at 2, *League of Women Voters of Michigan v. Johnson*, No. 2:17-cv-14148 (E.D. Mich. Apr. 4, 2018) (ECF No. 47) (denying political party intervention because of these widely shared interests). Moreover, Movants' purportedly "distinct" added interest in "conserving their resources" is an undeveloped afterthought in their briefing, *see* ECF No. 25-1 at 2, and is otherwise insufficient because mandatory intervention requires "something more than an economic interest." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (citation omitted). In the end, Movants' alleged "interest is a generalized one and not the sort of particularized interest that is required for intervention of right." *See Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 251 (D.N.M. 2008) (applying *Chiles*, 865 F.2d at 1212).

Additionally, Movants' stated interests are not cognizable. A "legally protectable interest" is "one which the substantive law recognizes as belonging to" the movant "that derives from a legal right." *Mt. Hawley Ins. Co.*, 425 F.3d at 1311 (citation omitted). Distinct from these protectable interests are Movants' abstract and purely partisan concerns that are derivative of no legal right. As the Supreme Court

has repeatedly recognized in other contexts, supporting an election regulation because of its political effects constitutes a "constitutionally impermissible" interest, *Dunn v. Blumstein*, 405 U.S. 330, 355 (1972), and the courts are "not responsible for vindicating generalized partisan preferences," *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018); *see also Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203 (2008) (observing that partisan objectives for a voting restriction are not legitimate interests). The Eleventh Circuit has reached the same conclusion, recently rejecting standing for Movants' Democratic counterparts when they pursued an insufficiently "general interest in [their] preferred candidates winning as many elections as possible[.]" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020).[4]

Movants' stated interests suffer from the same flaws here. They rely on a constitutionally impermissible premise—that having laws that chill or altogether prevent Plaintiffs from engaging in protected First Amendment activity concerning absentee balloting somehow helps "candidates running as Republicans and voters who are members of the Republican Party." ECF No. 25-1 at 6 (citation omitted).[5]

---

[4] The district court in *Jacobson* exercised its discretion to allow the Republican Party entities to intervene permissively, *see Jacobson v. Detzner*, No. 4:18-CV-262-MW/CAS, 2018 WL 10509488, at *1 (N.D. Fla. July 1, 2018), but the Eleventh Circuit was not asked to review that decision, *see* 974 F.3d at 1242.

[5] This assertion follows the trend of political parties articulating a theory of standing in other cases based upon a purely partisan interest in election regulation described alarmingly as a "zero sum game." *See, e.g.*, Transcript of Oral Argument at 37–38,

But this case concerns the free speech and association rights of organizations focused on increasing civic engagement to participate in expressive election-related conduct, not the regulation of Georgia's elections generally or the partisan outcomes of races between Democrats and Republicans. Movants' transparently partisan motivations are insufficient to justify intervention. Granting intervention would risk allowing bona fide disputes about protecting First Amendment rights within the framework of Georgia's election administration to devolve into partisan battles over whether those rules are perceived to benefit candidates of one political party over another.

In sum, Movants have not established a sufficiently specific or cognizable interest to support their intervention in this case. Their generic alleged interests fail to even acknowledge the nature of the particular challenged provisions here, and in any event represent either overgeneralized concerns shared by all Georgians or bare partisan objectives that are inappropriate for this case. The Court should deny Movants' request to intervene on this basis alone.

---

*Arizona Republican Party v. Democratic National Committee*, Case No. 19-1258 (U.S. Mar. 2, 2021) (arguing that the state Republican Party had an interest in the case because the election regulation framework "puts [Republicans] at a competitive disadvantage relative to Democrats. Politics is a zero sum game, and every extra vote [Democrats] get" could be "the difference between winning an election 50 to 49 and losing").

**B. Movants have failed to establish an impairment absent their intervention.**

Even accepting the generalized and politicized interests that Movants identify, they fail to show how this case challenging three specific provisions of SB 202 will in any way affect those interests. Movants are required to prove that this litigation imposes a "practical impairment" of their interests. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004). As explained above, their brief fails to engage with the specific nature of Plaintiffs' claims at all—much less how Movants' interests may be practically impaired by the disposition of these claims. Movants' brief is a boilerplate conclusion that an adverse decision would negatively impact their interests, without stating what their interests are or how they would be impacted. *See* ECF No. 25-1 at 7.

Plaintiffs are nonpartisan voter engagement organizations who assist voters of all political persuasions, *see* Compl. ¶¶ 17, 21, 25–27, and allowing or curtailing their services does not predictably redound to the benefit of any political party. As such, Movants do not attempt to show that a decision striking down the three provisions at issue in this case would harm Republican candidates or voters. And even if Movants had argued this point, allowing them to use this prediction to show impairment would enable Movants to rely on "speculative" concerns that are entirely "contingent upon some future events." *Alabama*, 2006 WL 2290726, at *3 (citation

omitted); *see also Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co*., 105 F.R.D. 106, 110–11 (D.C. Cir. 1985) (denying intervention because the movant's "interest in the subject matter of [the] litigation is purely hypothetical"); *Johnson v. Mortham*, 915 F. Supp. 1529, 1538 (N.D. Fla. 1995) (rejecting intervention because the alleged impairment to the movant's "generalized interest" was "no more than speculative"). Relying on this type of wholly speculative impairment fails to establish the "practical disadvantage requisite for intervention," *see Chiles*, 865 F.2d at 1214, and warrants denying Movants' request.

### C. Movants are adequately represented by the existing Defendants.

Movants' request for intervention also separately fails because they have not proven they are inadequately represented by Defendants. Adequate representation is presumed "when an existing party pursues the same ultimate objective as the party seeking intervention." *Burke*, 833 F. App'x at 293 (quoting *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993)). Because the Court also presumes that a "government entity adequately represents the public," Movants must "make a strong showing of inadequate representation" to overcome those presumptions. *Id.* (quoting *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015)). Movants have failed to make any showing to rebut these presumptions because their stated objective to preserve SB 202 (without addressing the provisions

at issue here) is what the Defendants are mandated by law to do. *See* O.C.G.A. §§ 45-15-3(6) (requiring the Attorney General to "represent the state in all civil actions tried in any court"), 21-2-31 (requiring the State Election Board to regulate and ensure compliance with election laws). There is simply no daylight between what Movants seek and what Defendants already plan and are required to do under Georgia law.

Even if Defendants could somehow overcome these presumptions with a strong showing, the Court should still deny intervention because Defendants adequately represent Movants' purported interests in this case. "[A]dequate representation exists '[1] if no collusion is shown between the representative and an opposing party, [2] if the representative does not have or represent an interest adverse to the proposed intervener, and [3] if the representative does not fail in fulfillment of his duty.'" *Stone*, 371 F.3d at 1311 (quoting *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999)) (brackets in original).

Movants have asserted no evidence of collusion between Plaintiffs and Defendants—nor could they, because no such evidence exists. Nor have they identified any relevant interest held by Defendants that is adverse to their own or any suggestion that Defendants will fail in their pursuit of those shared interests. Where, as here, a government entity plans to and is vigorously defending the same

interest and ultimate objective a purported intervenor seeks to achieve, intervention is unwarranted. *See Athens Lumber Co.*, 690 F.2d at 1366 (affirming denial of intervention and rejecting inadequacy argument where proposed intervenor shared goal of upholding the constitutionality of a statute with government defendant). Movants have not argued that their approach to defending the challenged provisions would differ from Defendants' strategy. In fact, they have not stated how they would defend the challenged provisions. But in any event, "[a] mere difference of opinion concerning the tactics with which litigation should be handled does not make inadequate the representation" of existing parties. *Gumm v. Jacobs*, 812 F. App'x 944, 947 (11th Cir. 2020) (quoting *Jones v. Prince George's County*, 348 F.3d 1014, 1020 (D.C. Cir. 2003)); *accord Saldano v. Roach*, 363 F.3d 545, 555 (5th Cir. 2004) ("Simply because the [proposed intervenor] would have made a different [litigation] decision does not mean that the Attorney General is inadequately representing the State's interest[.]").

Moreover, the Defendants and their representatives are fully aligned with Movants—particularly Movant the Georgia Republican Party. *See* ECF No. 25-1 at 2. The Georgia General Assembly passed SB 202 along party-line votes with Republican majorities in both chambers and Republican Governor Brian Kemp signed the bill into law. Defendants Raffensperger, Sullivan, Mashburn, and Le

constitute a majority of the State Election Board and are all members of the Georgia Republican Party. Attorney General Carr is also the past chair of the Republican Attorneys General Association, and Special Assistant Attorney General Bryan Tyson is a member of the Republican National Lawyers Association. It is apparent that the Defendants and their attorneys will vigorously advance the Movants' interests in defending the enactments of Georgia's Republican-controlled government and in electing Republicans to office.

Indeed, many elected officials dictating the government's approach to this case have already said as much. Governor Kemp, for example, recently expressed in no uncertain terms that the challenged provisions of SB 202 are "worth . . . the lawsuits" and the State "will not be backing down from this fight" in court. *See* Tal Axelrod, *Kemp: Voting law 'worth the boycotts as well as the lawsuits'*, THE HILL (Apr. 3, 2021), Ex. D. Attorney General Carr has likewise publicly stated his intent to "properly evaluate this law and defend the state and its citizens." Greg Bluestein, *Georgia's sweeping elections overhaul faces new legal challenge*, ATLANTA JOURNAL-CONSTITUTION (Mar. 28, 2021), Ex. C.[6] These commitments reveal that

---

[6] In a press conference, Attorney General Carr reinforced his support for SB 202 and laid out his intentions for "when we defend this bill in court." Dave Miller, *Attorney General Carr pushes back on GA voting law*, WALB NEWS 10 (Apr. 5, 2021), https://www.walb.com/2021/04/05/attorney-general-carr-pushes-back-ga-voting-law/. Georgia House Speaker David Ralston has also stated that mass absentee ballot

this litigation stands in stark contrast to the Eleventh Circuit cases Movants cite, *see* ECF No. 25-1 at 10, in which the court ruled that the government's choice to settle or not appeal an adverse decision made proposed intervenors inadequately represented. *See, e.g.*, *Clark*, 168 F.3d at 461 (county defendant's suggestion of a settlement in an election law dispute weighed in favor of granting voters' intervention); *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993) (county commissioners' failure to appeal entitled proposed intervenors to pursue the appeal).

At bottom, Movants admit that their contributions to this case would merely be a "helpful supplement" to the arguments Defendants will already present. *See* ECF No. 25-1 at 9 (citation omitted). Such "supplement" might be appropriate for an amicus brief, but it does not justify complicating the proceedings by adding redundant parties who will file only duplicative briefing and drag out any discovery process. Thus, Movants have failed to carry their burden that their purported interests would be inadequately presented in this case.

---

efforts would "certainly drive up turnout," *see* Compl. ¶ 59, in a way that would be "extremely devastating to Republicans and conservatives in Georgia." *See* Aris Folley, *Georgia's GOP House Speaker Says Vote-By-Mail System Would Be 'Devastating to Republicans'*, THE HILL (Apr. 2, 2020), https://thehill.com/homenews/state-watch/490879-georgias-gop-house-speaker-says-vote-by-mail-system-says-vote-by-mail-system-would-be-devastating.

Movants' failure to prove any one of these elements forecloses their intervention as of right. The Court should therefore deny Movants' request for intervention as of right.

## II. Movants have not justified the delays and prejudice of permitting intervention.

Movants have also failed to establish the elements for permissive intervention under Rule 24(b), and do not address the fact that allowing their intervention will result in unnecessary delay, inefficiencies, and prejudice to the parties. The Eleventh Circuit has made clear that "[i]f there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b)[.]" *Worlds v. Dep't of Health & Rehab. Servs., State of Fla.*, 929 F.2d 591, 595 (11th Cir. 1991). Even if a common question of law or fact exists or the requirements of Rule 24(b) are otherwise satisfied, "the court may refuse to allow intervention," *id*., to avoid unnecessary delay in the proceedings or undue prejudice to the parties. *See* Fed. R. Civ. P. 24(b)(3). Permissive intervention should be denied here for both reasons.

*First*, the Eleventh Circuit has recognized that "the introduction of additional parties inevitably delays proceedings." *Athens Lumber Co.*, 690 F.2d at 1367; *accord Worlds*, 929 F.2d at 595. In determining whether permissive intervention is warranted despite the inevitable delays, courts weigh the specificity of the movant's

18

interests and the degree of their adequate representation by existing parties as a "factor to be balanced in a permissive intervention assessment." *See In re Pinchuk*, No. 1:13-cv-22857, 2014 WL 12600728, at *6 (S.D. Fla. Jan. 27, 2014); *see also Athens Lumber Co.*, 690 F.2d at 1367 (denying permissive intervention in part because of "the remoteness and the general nature" of the movant's claimed interests); *Smith v. Cobb Cty. Bd. of Elections & Registrations*, 314 F. Supp. 2d 1274, 1312 (N.D. Ga. 2002) (denying permissive intervention to voters in part because the government adequately represented them).

For political entities or representatives in particular, courts have regularly denied permissive intervention when the lack of distinct interests or the presence of adequate representation would result in Movants' intervention needlessly complicating the proceedings.[7] In the Eleventh Circuit, courts have routinely refused

---

[7] In denying permissive intervention to the same Republican Party intervenors, for example, one court observed that their interests were too general and were adequately represented because the "right to vote, and the issues raised here, are the same without regard to the type of political race in which those voting rights are exercised." *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, No. 1:20CV457, 2020 WL 6591397, at *2 (M.D.N.C. June 24, 2020), *on reconsideration in part,* No. 1:20CV457, 2020 WL 6589359 (M.D.N.C. June 30, 2020) (allowing amicus participation). Numerous other courts have ruled similarly. *See, e.g.*, Order at 2, *League of Women Voters of Michigan v. Johnson*, No. 2:17-cv-14148 (E.D. Mich. Apr. 4, 2018) (ECF No. 47); *Ansley v. Warren*, No. 1:16-cv-54, 2016 WL 3647979, at *3 (W.D.N.C. July 7, 2016); *One Wisconsin Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015); *Am. Ass'n of People With Disabilities*, 257 F.R.D. at 240.

to allow permissive intervention in election law cases when partisan actors allege vague, speculative, non-cognizable interests, or are already adequately represented by the State. *See, e.g.*, *Alabama*, 2006 WL 2290726, at *9; *Chestnut v. Merrill*, No. 2:18-CV-907-KOB, 2018 WL 9439672, at *1–2 (N.D. Ala. Oct. 16, 2018); *League of Women Voters of Fla. v. Detzner*, 283 F.R.D. 687, 689 (N.D. Fla. 2012). That is precisely the situation here, where the Movants have not alleged any specific harm to them if the three challenged provisions of SB 202 are struck down.

Plaintiffs allege a narrow set of First Amendment challenges to a narrow set of provisions in SB 202. Adding Movants to this targeted case would needlessly complicate and inevitably delay its resolution. Tolerating these unnecessary added complications and delays is unwarranted because, as described above, Movants' alleged stake in this case only amounts to the type of vague and unrecognized interests that courts in this Circuit have rejected. *See Alabama*, 2006 WL 2290726, at *9; *Chestnut*, 2018 WL 9439672, at *1–2; *League of Women Voters of Fla.*, 283 F.R.D. at 689.

Movants have also failed to show why they are not adequately represented by Defendants who are already seeking the exact same ultimate outcome. As other courts have ruled in denying permissive intervention to the same Republican Party entities, "the present parties are more than capable of supporting and defending" the

challenged laws on behalf of the State. *See, e.g.*, *Democracy N. Carolina*, 2020 WL 6591397, at *2 (denying Republican committees permissive intervention in election law case). Adding Movants here will add nothing more than delays and the "'accumulati[on] [of] arguments without assisting the court.'" *See id.* (quoting *Allen Calculators, Inc. v. Nat'l Cash Register Co.*, 322 U.S. 137, 141–42 (1944)).

*Second*, permitting Movants to intervene will unduly prejudice Plaintiffs and impose an additional burden on the Court's resources. Movants' copy-and-paste approach to this case shows an unwillingness to engage with the issues that will generate excessive motions practice and drag out discovery. For example, Movants' proposed Answer violates the basic requirements of Rule 8 because it fails to adequately admit or deny many of the allegations in Plaintiffs' Complaint. *See* Complaint and Proposed Answer Combination, Ex. B. Simply answering that an allegation in the Complaint "speaks for itself" is insufficient and would result in the filing of a motion to strike. *See F.D.I.C. v. Stovall*, No. 2:14-cv-00029-WCO, 2014 WL 8251465, at *1 (N.D. Ga. Oct. 2, 2014); *Donley v. City of Morrow, Essie W.*, No. 1:12-cv-3207-TCB, 2013 WL 11330646, at *3 (N.D. Ga. Apr. 3, 2013).

For example, paragraph 4 of the Complaint alleges that Georgia's 2020 and 2021 elections "were conducted safely and securely," contains a quote from the Secretary of State affirming the same, and states that several Georgia officials

attested to the validity and accuracy of those elections; but Movants' proposed Answer merely states "[t]he referenced quotes speak for themselves." *See* Ex. B at 3. This response is deficient because it is unclear if Movants are admitting that the quote is accurate, and it completely fails to respond to the remaining allegations in paragraph 4. Likewise, Movants' proposed response to paragraph 6—"The legislative process speaks for itself"—sheds no light on whether Movants admit or deny the allegations that the legislature's process was secretive and provided little to no opportunity for public input or review. *See id.* at 4. These are just a few examples.[8] For the same reasons, permitting Movants' intervention would needlessly drain the Court's resources.

In sum, the Court should deny intervention because Movants lack any cognizable interest in this litigation, let alone interests that would be impaired or are not already adequately represented by Defendants. Movants' participation instead promises to unnecessarily protract every phase of the litigation, including right out of the gate, prejudicing Plaintiffs' ability to obtain timely relief. Movants' concerns

---

[8] Movants' proposed Answer also insufficiently states that "Georgia law speaks for itself," "Election dates speak for themselves," and "Voting data speak for themselves." *See* Ex. B at ¶¶ 47–48, 50–53.

are better suited for involvement as amicus curiae,[9] and mandatory and permissive intervention should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Movants' motion for intervention as of right and permissive intervention under Rule 24.

Respectfully submitted this 28th day of April, 2021.

/s/ Robert B. Remar
Robert B. Remar (Ga. Bar No. 600575)
Katherine L. D'Ambrosio (Ga. Bar No. 780128)
ROGERS & HARDIN LLP
229 Peachtree Street NE
2700 International Tower
Atlanta, GA 30303
Tel: (404) 522-4700

---

[9] "Because allowing a non-party to become an amicus curiae will permit the original parties to run their own case, granting amicus curiae is the strongly preferred option." *Vazzo v. City of Tampa*, No. 8:17-cv-2896-T-36AAS, 2018 WL 1629216, at *6 (M.D. Fla. Mar. 15, 2018) (citation and quotations omitted), *report and recommendation adopted sub nom.*, No. 8:17-cv-2896-T-36, 2018 WL 1620901 (M.D. Fla. Apr. 4, 2018); *see also Democracy N. Carolina*, 2020 WL 6589359, at *1 (favoring amicus participation for partisan proposed intervenors); *Ansley*, 2016 WL 3647979, at *3 (same).

Fax: (404) 525-2224
rremar@rh-law.com
kdambrosio@rh-law.com

Danielle Lang*
Jonathan Diaz*
Caleb Jackson*
Hayden Johnson*
Valencia Richardson*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, D.C. 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
cjackson@campaignlegalcenter.org
hjohnson@campaignlegalcenter.org
vrichardson@campaignlegalcenter.org

*Counsel for Plaintiffs*

*\* Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>
## <u>AND COMPLIANCE WITH LOCAL RULE 5.1</u>

I hereby certify that I have this date electronically filed the within and foregoing, which has been prepared using 14-point Times New Roman font, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

Dated: April 28, 2021.

/s/ Robert B. Remar
Robert B. Remar
GA Bar No. 600575

*Counsel for Plaintiffs*