UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VOTEAMERICA, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:21-cv-01390-JPB |
| BRAD RAFFENSPERGER, in his official capacity as the Secretary of State of the State of Georgia, et al., | |
| Defendants. | |

## **<u>ORDER</u>**

Before the Court are the following motions:

1. Defendants Brad Raffensperger, Rebecca Sullivan, David Worley, Matthew Mashburn and Anh Le's (collectively "State Defendants") Motion to Dismiss (ECF No. 40); and

2. Defendants Republican National Committee, National Republican Senatorial Committee, National Republican Congressional Committee and Georgia Republican Party, Inc.'s (collectively "Intervenor Defendants") Motion to Dismiss (ECF No. 53).[1]

Having fully considered the papers filed therewith, the Court finds as follows:

---

[1] State Defendants and Intervenor Defendants are collectively referred to as "Defendants."

I.   **BACKGROUND**

Plaintiffs VoteAmerica, Voter Participation Center and Center for Voter Information (collectively "Plaintiffs") filed this action seeking a declaration that specified provisions of Georgia Senate Bill 202 ("SB 202") violate the United States Constitution.  Governor Brian Kemp signed SB 202 into law on March 25, 2021, and the statute regulates election-related processes and activities ranging from absentee ballot voting to out-of-precinct in-person voting.  Plaintiffs oppose certain SB 202 regulations that govern third parties' provision of absentee ballot applications to voters on the grounds that the regulations abridge their rights to free speech, expression and association.

II.   **DISCUSSION**

State Defendants seek dismissal on standing grounds and on the merits, and Intervenor Defendants join only in State Defendants' arguments challenging the merits of Plaintiffs' allegations.  The Court will address the standing question first. *See Cuban Am. Bar Ass'n v. Christopher*, 43 F.3d 1412, 1422 (11th Cir. 1995) (stating that the Court is obligated "'to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based'" (quoting *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991))).

2

A.    **Standing**[2]

To satisfy standing requirements under Article III of the United States

Constitution, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or
> hypothetical; (2) the injury is fairly traceable to the challenged action
> of the defendant; and (3) it is likely, as opposed to merely speculative,
> that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-

81 (2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  These

requirements ensure federal courts adjudicate only actual "cases" and

"controversies."[3]  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925

F.3d 1205, 1210 (11th Cir. 2019).

_____

[2] Standing is jurisdictional, *see Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d
1190, 1203 n.42 (11th Cir. 1991), and a motion to dismiss for lack of standing can
rest on either a facial or factual challenge to the complaint, *see Stalley ex rel. U.S.
v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  In
evaluating a facial challenge, a court considers only the allegations in the
complaint and accepts them as true, whereas in a factual challenge, a court
considers matters outside the pleadings, such as testimony and affidavits.  *See
Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Here, the
parties do not reference matters outside the Complaint with respect to their
standing arguments.  Therefore, the Court will evaluate State Defendants' standing
argument as a facial challenge and will limit its analysis to facts alleged in the
Complaint.
[3] "Where only injunctive relief is sought, only one plaintiff with standing is
required."  *Gwinnett Cnty. NAACP v. Gwinnett Cnty. Bd. of Registration &
Elections*, 446 F. Supp. 3d 1111, 1118 (N.D. Ga. 2020) (quoting *Martin v. Kemp*,

### 1.     Injury

"'[A]n organization has standing to sue on its own behalf if the defendant's illegal acts impair [the organization's] ability to engage in its projects by forcing [it] to divert resources to counteract those illegal acts.'" *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (quoting *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008)).  In *Common Cause/Georgia*, the Eleventh Circuit Court of Appeals found that the plaintiff had established an injury sufficient to challenge a Georgia voting statute because the plaintiff planned to divert resources from its regular voter registration, mobilization and education activities to a campaign to educate and assist voters in complying with the new voter photo identification requirement under the challenged statute. *See id.*  The court reasoned that this diversion constituted an adequate injury because it would cause the organization's noneconomic goals to suffer.  *See id*. at 1350-51.  Courts have found that a sufficient injury is demonstrated for standing

---

341 F. Supp. 3d 1326, 1333 (N.D. Ga. 2018)); *see also, e.g.*, *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) (finding that it was not necessary to consider the standing of other plaintiffs where standing was established as to one plaintiff); *Glassroth v. Moore*, 335 F.3d 1282, 1293 (11th Cir. 2003) ("Having concluded that those two plaintiffs have standing, we are not required to decide whether the other plaintiff, the one who has not altered his behavior . . . , has standing.").  Therefore, the Court's analysis will focus on one plaintiff for the purpose of deciding the instant motions to dismiss.

purposes even when the diversion of resources is only "reasonably anticipate[d]." *E.g.*, *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012) (alteration in original) (internal punctuation and citation omitted).

Here, the Complaint alleges that "VoteAmerica's core mission is to persuade and assist all eligible American voters to engage in the electoral process," and it "does so by providing access to trusted election information, open platform technology, and education programs." Compl. ¶ 17, ECF No. 1. "A key component of . . . VoteAmerica's civic engagement activity and speech is providing voters with information and resources to facilitate their applications for absentee ballots." *Id.* ¶ 18. VoteAmerica provides "an interactive Absentee and Mail Ballot tool" that allows voters to provide identification information that VoteAmerica uses to prepare an official absentee ballot application form for the voter and register the voter for further voter engagement communications from VoteAmerica. *Id.* ¶ 19.

VoteAmerica alleges that SB 202 will require VoteAmerica to divert resources toward designing a new application to comply with SB 202's requirements and implementing "a costly mechanism to comply with SB 202's restrictions on who can receive an application from VoteAmerica." *Id.* ¶ 22. It further alleges that it would have to divert "a significant portion of its limited

programmatic and financial resources and spend hundreds of hours of staff time to develop a new matching algorithm" to ensure it conforms to the challenged provisions. *Id.* ¶ 23. Based on the difficulties it expects to encounter in complying with the challenged provisions and the potential penalties for non-compliance, VoteAmerica concludes that "complying with SB 202 would effectively preclude VoteAmerica from fulfilling its mission and encouraging and supporting Georgia voters." *Id.* ¶ 25.

Given these allegations, the Court finds that VoteAmerica has alleged a diversion of resources that is sufficient to show an injury for standing purposes. In *Common Cause/Georgia*, the court noted that one of the plaintiffs was "actively involved in voting activities" and planned to divert resources "to educate and assist voters" in complying with the challenged voting identification requirements. 554 F.3d at 1350. In finding that standing was established there, the court focused on the ***diversion*** of resources—the shifting of resources from one activity to another— as the essence of the inquiry and did not require more. *Id.*

At the pleading stage, VoteAmerica's allegation of a diversion of staff hours and limited program and financial resources to efforts to comply with SB 202's

6

new requirements are sufficient to allege standing.[4]  These allegations belie State

Defendants' argument that VoteAmerica has not shown from what activities it

would be diverting resources in order to comply with SB 202's requirements.

For these reasons, the Court finds that the Article III standing requirements

to bring this suit are satisfied by at least VoteAmerica.[5]

### B.    Failure to State a Claim

Having resolved the threshold standing issue, the Court now turns to State

Defendants' arguments that the Complaint fails to state a claim upon which relief

may be granted.[6]

In evaluating a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es]

them in the light most favorable to the plaintiff."[7]  *Traylor v. P'ship Title Co.*, 491

---

[4] Notwithstanding this decision, Plaintiffs will be expected to prove at trial that
they have indeed suffered an injury to be entitled to relief.  *See Havens Realty
Corp. v. Coleman*, 455 U.S. 363, 379 n.21 (1982).

[5] State Defendants do not address the traceability and redressability prongs of the
standing analysis and have therefore waived their arguments on these points.  *See
Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012)
(stating that "the failure to make arguments and cite authorities in support of an
issue waives it").

[6] As noted above, Intervenor Defendants join in State Defendants' arguments on
the merits.

[7] A court is limited to reviewing what is alleged "'within the four corners of the
complaint.'"  *Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir.
2016) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.

F. App'x 988, 989 (11th Cir. 2012).  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a complaint does not suffice "if it tenders 'naked assertions' devoid of 'further factual enhancement'" (alteration omitted) (quoting *Twombly*, 550 U.S. at 557)).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'"  *Burch v. Remington Arms Co.*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

---

2006)).  If the court accepts matters outside the complaint, it "must convert the motion to dismiss into one for summary judgment."  *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985).

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, and must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *Traylor*, 491 F. App'x at 990 (quoting *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010)).

The Court will now address the question of whether Plaintiffs have satisfied their pleading burden with respect to each count of the Complaint.

1. **Count I (free speech under the First Amendment); Count II (freedom of association under the First Amendment); and Count III (compelled speech under the First Amendment)[8]**

Plaintiffs allege that SB 202 restricts and chills their core political speech, including their "communications and expressive activities aimed at encouraging voters to participate in the political process through absentee voting." Compl. ¶ 107, ECF No. 1. Among other claims, the Complaint asserts that the challenged absentee ballot application provisions will:

---

[8] In their briefs, State Defendants cite cases considering undue burden on the right to vote claims. However, they do not offer any basis for evaluating Plaintiffs' free speech, expression and association claims under the framework for determining the constitutionality of voting statutes. As such, the Court will proceed with an analysis of Plaintiffs' claim under First Amendment jurisprudence.

(i) "obscure Plaintiffs' intended message and dissuade voters from using the absentee ballot application form";

(ii) undermine Plaintiffs' "core political expression by altering and dictating the content of their voter engagement communications";

(iii) "restrict[] the content of the communications Plaintiffs can send" to voters;

(iv) "proscribe[] certain types of speech that Plaintiffs currently communicate and would plan to continue communicating to engage and assist voters";

(v) "restrict[] to whom Plaintiffs can communicate";

(vi) "eliminate[] the method by which Plaintiffs . . . gain a foothold with . . . voters for further association and group engagement for political expression"; and

(vii) "force[] Plaintiffs and other individuals or organizations . . . to speak for the government by making a disclaimer that Plaintiffs would not otherwise recite."

*Id*. ¶¶ 110-13, 127, 129, 136.  Plaintiffs contend that these restrictions are content-based because they apply only to speakers who discuss absentee ballots, and the provisions are neither narrowly tailored to serve a compelling state interest nor rationally related to any such interest.  *See, e.g.*, *id*. ¶¶ 116, 118, 120.  Plaintiffs conclude that the challenged provisions "risk derailing their ability to communicate their message in Georgia" and will reduce the voices available to convey political messages.  *Id*. ¶¶ 114-15.

State Defendants challenge Counts I through III of the Complaint primarily on three grounds.  They assert that the challenged provisions (i) do not impinge on protected speech because ballots serve primarily to elect candidates, not as a vehicle for political expression; (ii) impose, at most, a minimal burden on Plaintiffs and are "entirely sensible"; and (iii) serve and are "amply justified by" compelling state interests.  State Defs.' Br. 9-18, ECF No. 40-1.

The First Amendment prohibits the enactment of laws that abridge the freedom of speech.  *See* U.S. Const. amend. I.  Therefore, governments generally "ha[ve] no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)).  Regulations that compel speech may also run afoul of the First Amendment.  For example, in the context of a political campaign, the Supreme Court in *McIntyre v. Ohio Elections Commission* found that an Ohio statute improperly regulated speech where it required that publications intended to influence voters bear certain source identification information.  514 U.S. 334, 345-46 (1995).

Further, the "freedom to associate with others for the common advancement of political beliefs and ideas is . . . protected by the First and Fourteenth Amendments."  *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973); *see also Roberts v.*

11

*U.S. Jaycees*, 468 U.S. 609, 622 (1984) (stating that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political . . . ends").

Regulation of speech based on the topic discussed or the idea or message expressed is presumptively unconstitutional and may be justified only if the government proves that the regulation is narrowly tailored to serve compelling state interests. *See Reed*, 576 U.S. at 165 (stating that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech" (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993))).

In light of Plaintiffs' allegations that the challenged provisions limit their ability to convey their message, prohibit them from associating with certain categories of voters and force them to include certain language on the absentee ballot applications that they do distribute, the Court finds that Plaintiffs have stated a plausible claim that the challenged provisions restrict, impinge or chill speech, association or expression in some way. State Defendants' arguments to the contrary involve answering questions regarding the type of protection afforded the category of speech at issue here; the severity of the burden imposed; the standard

of review that should apply to the claims; and whether the state has identified

interests sufficient to meet the applicable standard of review.  This requires the

type of substantive, merits inquiry that is not appropriate on a motion to dismiss.

Thus, State Defendants' arguments on these points, while relevant to the analysis

of Plaintiffs' claims, are more suitable for a later day.

For these reasons, the Court declines to dismiss Counts I, II and III of the

Complaint.

## 2.    Count IV (substantial overbreadth in violation of the First Amendment)

Plaintiffs allege that SB 202's provisions governing the manner in which

absentee ballot application forms may be sent to voters are unconstitutionally

broad because they "regulate a sweeping amount of noncommercial political

speech and constitutionally protected expressive conduct."  Compl. ¶ 145, ECF No.

1.  Plaintiffs explain that the provision requiring the inclusion of certain disclaimer

language on absentee ballot applications sent by third parties "lacks any reasonable

bounds on its application."  *Id*. ¶ 147.  They also allege that the penalties for

violating that provision will impermissibly chill or present a substantial risk of

chilling speech, including "the most benign and commonplace scenarios of

individual Georgians helping each other participate in the political process."  *Id*. ¶¶

146, 148.

Additionally, Plaintiffs allege that the SB 202 provision prohibiting third parties from sending out pre-filled absentee ballot application forms is overly broad because it applies "regardless of whether the absentee ballot application distributor is sending individualized applications in response to isolated requests from voters or mass applications on an unsolicited basis." *Id*. ¶ 149.

Finally, Plaintiffs contend that the provision that bars third parties from sending ballot applications to voters who have already requested, received or voted an absentee ballot, without any exception, is overinclusive for reasons including that it would extend to voters who made an error on a previous request or need a new ballot for another reason. *Id*. ¶ 150.

State Defendants counter that the challenged provisions have a "legitimate sweep" and do not impinge on any constitutional rights. State Defs.' Br. 19-20, ECF No. 40-1. They further argue that the provisions represent a "reasonable choice Georgia has made to curtail abuses" and that whatever "narrow sliver of potentially problematic exceptions" Plaintiffs raise are not substantial enough to implicate the overbreadth doctrine. *Id*. at 20.

"The overbreadth doctrine prohibits the [g]overnment from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002).

> The doctrine seeks to strike a balance between competing social costs. On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional . . . has obvious harmful effects. In order to maintain an appropriate balance, [the Supreme Court] vigorously enforce[s] the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.

*United States v. Williams*, 553 U.S. 285, 292 (2008) (citation omitted). Although the "concept of 'substantial overbreadth' is not readily reduced to an exact definition," the "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

Here, answering the question of whether the conduct regulated by the challenged provisions implicates a constitutional interest requires analysis of facts outside the complaint, which is inappropriate on a motion to dismiss. However, assuming for argument's sake that the provisions do impinge on constitutional rights, it is a close question as to whether Plaintiffs have "nudged their [overbreadth] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

15

A key consideration of the overbreadth doctrine is whether the regulation is substantially overbroad in relation to those parts of the statute that are legitimate. While the Complaint asserts, and State Defendants acknowledge, certain circumstances under which the provisions could reach or at least chill protected conduct, the allegations are not clear that these applications are substantial enough to trigger the overbreadth doctrine.  At this stage, however, the Court must take the allegations in the Complaint at face value and is not permitted to weigh and decide the disputed factual considerations necessary to answer the substantial overbreadth question.  Because the allegations appear plausible, even if the bar for ultimate success is high, the Court declines to dismiss Count IV of the Complaint.

### 3.   Count V (void for vagueness under the First and Fourteenth Amendments)

Plaintiffs allege that the provisions of SB 202 that regulate the transmission of absentee ballot applications to voters are vague in their use of the verb "send" because they compel Plaintiffs to guess at whether the word "applies beyond postal mail to include email, fax, social media, website posting, any other electronic communications, or even in-person distribution."  Compl. ¶¶ 156-58, ECF No. 1. Plaintiffs additionally contend that the provision requiring each absentee ballot application sent by third parties to include a disclaimer regarding the application's source is vague in its reference to "sufficient font size" and "reasonable degree of

color contrast." *Id.* ¶ 156.  Plaintiffs conclude that these regulations violate their

constitutional rights because they "fail[] to give reasonable notice of what

constitutes prohibited conduct." *Id.* ¶ 159.

Referring to dictionary definitions of the word "send," State Defendants

respond that when viewed in context, the word "naturally refers to conveyance of

the absentee ballot application by hard copy," and its use presents "no genuine

ambiguity." State Defs.' Br. 22, ECF No. 40-1.  They also argue that the

disclaimer provision requirements are similarly clear.  *See* State Defs.' Reply Br.

14, ECF No. 51.

The void for vagueness doctrine generally encompasses "at least two

connected but discrete due process concerns:  first, that regulated parties should

know what is required of them so they may act accordingly; second, precision and

guidance are necessary so that those enforcing the law do not act in an arbitrary or

discriminatory way." *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1320

(11th Cir. 2017) (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253

(2012)); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (stating that the

vagueness doctrine "requires that a penal statute define the criminal offense with

sufficient definiteness that ordinary people can understand what conduct is

prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement").

Nevertheless, the Supreme Court has cautioned that "[t]he root of the vagueness doctrine is a rough idea of fairness." *Colten v. Kentucky*, 407 U.S. 104, 110 (1972). Therefore, "[i]t is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Id.*

Here, State Defendants contend that the word "send" means to convey only by postal mail. *See* State Defs.' Br. 24, ECF No. 40-1. But they do not dispute that a dictionary they cite to support their argument defines "send" to include conveyance by email. *Id.* Thus, the term "send" could be ambiguous. The Court can similarly conceive of multiple interpretations of the font size and color contrast requirements of the disclaimer provision. Therefore, the allegations in the Complaint show above a speculative level that the challenged provisions could be vague and do not provide fair notice of what conduct is prohibited. That is all Plaintiffs are required to do at this stage of the litigation.

Analyzing State Defendants' arguments that the challenged provisions are not vague when viewed in their "ordinary, contemporary [and] natural meaning"

and that they "afford[] everyone 'fair notice' as to the conduct that SB 202 proscribes," State Defs.' Reply Br. 13-14, ECF No. 51, would require the Court to improperly address the merits of Plaintiffs' allegations at the motion to dismiss stage.

For these reasons, the Court declines to dismiss Count V of the Complaint.

## III.   **CONCLUSION**

Based on the foregoing analysis, the Court **DENIES** Defendants' motions to dismiss (ECF Nos. 40, 53).

**SO ORDERED** this 9th day of December, 2021.

**J. P. BOULEE**
United States District Judge