**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| VOTEAMERICA; VOTER PARTICIPATION CENTER; and CENTER FOR VOTER INFORMATION,<br><br>                   Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia; SARA GHAZAL, JANICE JOHNSTON, EDWARD LINDSEY, and MATTHEW MASHBURN, in their official capacities as members of the STATE ELECTION BOARD, Defendants,<br><br>and<br><br>REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN SENATORIAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; and GEORGIA REPUBLICAN PARTY, INC.,<br>                   Intervenor-Defendants. | Case No. 1:21-cv-01390-JPB<br>Judge J.P. Boulee |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................2

    I.    Plaintiffs' Are Substantially Likely to Succeed on Their First
        Amendment Claims Against the Ballot Application Restrictions ............2

        a.  Plaintiffs' Ballot Application Mailers Are Core Political
            Expression Subject to Strict Scrutiny................................................2

        b.  The Ballot Application Restrictions Are Content-Based
            Restraints on Speech Subject to Strict Scrutiny............................8

        c.  The Ballot Application Restrictions Curtail Plaintiffs'
            Associational Activities and are Subject to Strict Scrutiny ..........10

        d.  Neither *Anderson-Burdick* nor *Citizens United* Standards Apply
            Here ...................................................................................................12

        e.  The Ballot Application Restrictions Fail Under Any Heightened
            Scrutiny ............................................................................................13

            i.     The Mailing List Restriction if Not Narrowly Tailored
                  Nor Rationally Related to the States Interests ....................14

            ii.    The Prefiling Prohibition is Not Narrowly Tailored Nor
                  Substantially Related to the State's Interests......................16

            iii.   The Disclaimer Provision is Not Narrowly Tailored Nor
                  Substantially Related to the State's Interests......................19

    II.   Plaintiffs Will Suffer Irreparable Harm ....................................................21

    III.  The Balance of Equities Weighs in Plaintiffs' Favor, and a
        Preliminary Injunction Is Not Adverse to Public Interest........................23

CONCLUSION .................................................................................25

CERTIFICATE OF COMPLIANCE WITH RULE 32 ...........................27

CERTIFICATE OF SERVICE .............................................................28

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278

(N.D. Ga. 2020) ......................................................................................... 17

*Bolger v. Youngs Drug Products Corporation*, 463 U.S. 60 (1983) ................................. 16

*Boy Scouts of America v. Dale,* 530 U.S. 640 (2000) ................................................... 11-12

*Buckley v. American Constitutional Law Foundation, Inc.*,

525 U.S. 182 (1999) ...................................................................................... 9

*Burdick v. Takushi*, 504 U.S. 428 (1992) ...................................................... 12-13

*California Democratic Party v. Jones*, 530 U.S. 567 (2000) ........................................ 8

*Citizens United v. FEC*, 558 U.S. 310 (2010) .................................................... 13

*City of Austin, Texas v. Reagan National Advertising of Austin, LLC*,

142 S. Ct. 1464 (2022) ................................................................................. 9

*Coalition for Good Governance v. Kemp*, 1:21-CV-02070-JPB, 2021 WL 7501466

(N.D. Ga. June 24, 2021) ............................................................................ 22

*Coalition for Good Governance v. Kemp,* 1:21-CV-02070-JPB, 2021 WL 2826094

(N.D. Ga. July 7, 2021) ............................................................................... 24

*Consolidated Edison Co. of New York v. Public Service Commission of New York*,

447 U.S. 530 (1980) ..................................................................................... 16

*Democracy North Carolina v. North Carolina State Board of Elections*,

476 F. Supp. 3d 158 (M.D.N.C. Aug.  4, 2020) .............................................. 6

*Democratic National Committee v. Bostelmann*, 466 F. Supp. 3d 957

(W.D. Wis. 2020) ........................................................................................ 22

*Doe v. Reed*, 561 U.S. 186 (2010) ...................................................................... 15

*DSCC v. Simon*, No. 62-CV-20-585, 2020 WL 4519785

    (Minn. Dist. Ct. July 28, 2020) ........................................................................ 4

*Fitzgerald v. Alcorn*, 285 F. Supp. 3d 922 (W.D. Va. 2018) ........................................... 22

*Healy v. James*, 408 U.S. 169 (1972) .......................................................................... 12

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261 (11th Cir. 2006) ................... 23, 25

*Kusper v. Pontikes*, 414 U.S. 51 (1973) ......................................................................... 10

*League of Women Voters of Florida, Inc. v. Florida Secretary of State*,

    32 F.4th 1363 (11th Cir. 2022) ..................................................................... 23

*League of Women Voters of Tennessee v. Hargett*, 400 F. Supp. 3d 706

    (M.D. Tenn. 2019) .................................................................. 4, 5, 11, 12, 13

*Lichtenstein v. Hargett*, 489 F. Supp. 3d 742 (M.D. Tenn. 2020) ..................................... 5

*Martin v. City of Struthers, Ohio*, 319 U.S. 141 (1943) ................................................... 16

*McCullen v. Coakley*, 573 U.S. 464 (2014) ............................................................... 8, 15

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995) ................................... 12, 13

*Merrill v. Milligan,* 142 S. Ct. 879 (2022) ...................................................................... 23

*Meyer v. Grant*, 486 U.S. 414 (1988) .............................................................. 1, 4-5, 8, 12

*NAACP v. Button*, 371 U.S. 415 (1963) .......................................................................... 11

*NetChoice, LLC v. Attorney General, Florida*, No. 21-12355, 2022 WL 1613291

    (11th Cir. May 23, 2022) ................................................................................ 7

*New Georgia Project v. Raffensperger*, 976 F.3d 1278 (11th Cir. 2020) ....................... 24

*People First of Alabama v. Secretary of State for Alabama*,

    815 F. App'x 505 (11th Cir. 2020) ............................................................... 24

*Priorities USA v. Nessel*, 462 F. Supp. 3d 792 (E.D. Mich. 2020) ............................. 5, 11

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .................................................................... 23-24

*Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015) ................................................... 9

*Republican National Committee v. Common Cause Rhode Island*,

    141 S. Ct. 206 (2020)....................................................................................23

*Riley v. National Federation of the Blind of North Carolina, Inc.*,

    487 U.S. 781 (1988)......................................................................................19

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,

    547 U.S. 47 (2006)..........................................................................................7

*Spence v. Washington*, 418 U.S. 405 (1974) ......................................................7

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986) ................14

*Texas v. Johnson*, 491 U.S. 397 (1989) .............................................................7

*VoteAmerica v. Schwab*, No. CV 21-2253-KHV, 2021 WL 5918918

    (D. Kan. Dec. 15, 2021)...........................................................4, 5, 10-11, 14

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013).......................6

*Wreal, LLC v. Amazon.com*, 840 F.3d 1244 (11th Cir. 2016)..........................22

**Statutes & Regulations**

52 U.S.C. § 20507............................................................................................18

O.C.G.A. § 21-2-234........................................................................................18

O.C.G.A. § 21-2-381(a)(1)(C)(ii) ...............................................................17, 19

## Introduction

Plaintiffs VoteAmerica, Voter Participation Center ("VPC"), and Center for Voter Information ("CVI") seek a preliminary injunction of restrictive prohibitions on their pro-vote-by-mail communications with Georgia voters. Because the Ballot Application Restrictions directly target their core political expression and association—and do so in a content-based manner—they are subject to strict scrutiny under binding Supreme Court precedent. They cannot possibly meet that "well-nigh insurmountable" standard. *Meyer v. Grant*, 486 U.S. 414, 425 (1998).

In opposition, Defendants and Intervenors offer little. While they argue that lesser scrutiny should apply, they utterly fail to address the substantial Supreme Court and lower court jurisprudence holding that voter engagement activity—from petition circulation to voter registration to absentee ballot application distribution—is both expressive and associational. While they contend that there is an "ampl[e]" record to support the restrictions, Doc. 113 at 18, that record is little more than a few dozen unsubstantiated, hearsay, and often conspiratorial complaints from disgruntled voters, the vast majority of which were sent *after* the 2020 general election, when false claims of fraud were at a fever pitch. And while Defendants and Intervenors argue that the equities weigh in their favor, their complaints about the timing of this motion are unfounded and claims of "chaos"

are hyperbolic. Defendants will suffer no meaningful harm by merely allowing Plaintiffs to conduct their expressive activities, which will change nothing about the State's and counties' day-to-day administration of absentee voting.

Absent an injunction, Plaintiffs will suffer irreparable harm. Plaintiffs simply cannot both comply with SB 202 and continue their effective absentee ballot communications during the 2022 Georgia elections—efforts that persuaded hundreds of thousands of Georgians to participate in the electoral process through absentee voting in the last election. *See* Doc. 103-3 ¶¶ 23-25; Doc. 103-4 ¶ 9. Plaintiffs' Motion for Preliminary Injunction should be granted.

## Argument

## I.    Plaintiffs' Are Substantially Likely to Succeed on Their First Amendment Claims Against the Ballot Application Restrictions.

### a. Plaintiffs' Ballot Application Mailers Are Core Political Expression Subject to Strict Scrutiny.

Defendants contend that Plaintiffs' "conduct—sending absentee-ballot applications—is entirely separate from their message about absentee voting," Doc. 113 at 7, and that Plaintiffs' cover letters encouraging voters to apply to vote absentee (which Defendants concede is protected speech) is "unaffected by any of the challenged provisions," *id.* This is nonsense. VPC/CVI's cover letters, for example, include statements like: "I have sent you the enclosed absentee ballot

2

application to make requesting a ballot easy," "I have sent you the enclosed absentee ballot application for Georgia already filled out with your name and address," and "It's as easy as 1-2-3 . . .Step 1: You complete, sign, and mail the form on the reverse side of this sheet." *See*, *e.g.*, Doc. 103-3 at 37, 38, 42. Likewise, the cover letter included with applications disseminated via Plaintiff VoteAmerica's online tool instruct voters on how to "[f]ill out the form on the next page completely." Doc. 103-4 at 19. This voter encouragement speech would be rendered meaningless without the inclusion of an absentee ballot application.[1] Plaintiffs are not alone in their inclusion of absentee ballot applications as part of voter engagement communications. Such communications are commonplace.[2]

---

[1] In 2020, VPC/CVI tested messaging to voters that not only relied on inclusion of absentee ballot applications but also on prefilling of those applications. In a September 2020 memo, VPC/CVI explained their use of messaging that "call[ed] attention to the fact that the voter was explicitly chosen to receive the application by mail." Ex. 1-B at 7. The message was paired with a personalized vote by mail form, "which provides an exclusive voter experience." *Id.*

[2] Indeed, Intervenors sent *seven* such mailers to Georgia voters during the 2020 election cycle alone. *See* Ex. 1-A. These mailers included language like "Your Official Republican Party Absentee Ballot Application Is *Enclosed*," "Return one of the *enclosed* forms today and skip the long lines on Election Day," and "President Trump wants you to return *this* form!" *Id.* (emphasis added); *see also* Ex. 1-C (Georgia Republican Party "Absentee Push & Identification Door Script" directing door knockers to ask voters "Would you like to avoid long lines at your local polling location by filling out this absentee ballot application in less than 60 seconds so you can vote by mail in November's election).

Thus, it is unsurprising that Representative Barry Fleming, a key sponsor of SB 202, repeatedly acknowledged during the hearings that absentee ballot application distribution is protected First Amendment expression. *See* Doc. 113-2 at 87 (recognizing that restricting distribution of absentee ballot applications is "a freedom of speech issue"; "I cannot tell you, within some reason, you cannot send out something as far as campaigning."); *id.* at 101 ("[I[f a third-party group sends out . . . an absentee ballot application to an individual, that is a first amendment right."). On that point, Representative Fleming was correct.

Plaintiffs have cited substantial precedent holding that civic engagement activities, including distribution of absentee ballot applications, constitute expressive conduct. *See* Doc. 103 at 14-15.; *see also DSCC v. Simon*, No. 62-CV-20-585, 2020 WL 4519785, at *29-30 (Minn. Dist. Ct. July 28, 2020). Such activities are even more expressive when they are "intertwined with speech and association." *League of Women Voters of Tenn. v. Hargett*, 400 F. Supp. 3d 706, 720 (M.D. Tenn. 2019) (internal citation omitted). Restrictions on this type of core political expression are subject to the *Meyer-Buckley* exacting scrutiny rubric. *See VoteAmerica v. Schwab*, No. CV 21-2253-KHV, 2021 WL 5918918, at *17 (D. Kan. Dec. 15, 2021); *Hargett*, 400 F. Supp. 3d at 722. As *Meyer* makes clear, this level of scrutiny is "well-nigh insurmountable" because "First Amendment

protection[]" of core political speech "is at its zenith." 486 U.S. at 425. As such, courts equate *Meyer-Buckley* exacting scrutiny with strict scrutiny. *See, e.g.*, *VoteAmerica*, 2021 WL 5918918, at *17; *Hargett*, 400 F. Supp. 3d at 725 & n.9.

Yet, Defendants neither address this precedent nor attempt to distinguish it. *See* Doc. 113 (failing to address *Meyer*, *Buckley*, *VoteAmerica v. Schwab*, *Priorities USA v. Nessel*, and numerous other relevant cases). And Defendants misrepresent the few relevant cases they *do* address, inaccurately asserting that "[c]ourts around the country . . . have rejected allegations that *sending or collecting* forms is expressive conduct." Doc. 113 at 7-8 (emphasis added). In fact, Defendants' cited cases deal exclusively with the *collection* of voter registration applications and absentee ballots, not the *distribution* of such applications.[3]

Defendants also fail to mention that several of their cited cases specifically distinguish ballot or voter registration collection from distribution and assistance

---

[3] Intervenors make the same wrong argument. *See* Doc. 114 at 12-13. They additionally cite *Lichtenstein v. Hargett*, which mistakenly assumed a recipient of a blank absentee ballot application would not discern the sender's intended message. 489 F. Supp. 3d 742, 768 (M.D. Tenn. 2020). *Lichtenstein*, currently on appeal, is the only case to reach this conclusion and was wrongly decided.  In any event, as Judge Vratil observed in *VoteAmerica v. Schwab*, "*Lichtenstein* is not germane" because the evidence here demonstrates that Plaintiffs' "mailing [of] application packets is inherently expressive conduct that the First Amendment embraces." 2021 WL 5918918 at *6.

with voting materials, finding the latter to be expressive. For example, in *Voting for America, Inc. v. Steen*, the Fifth Circuit specifically held that "voter registration drives involve core protected speech" and that "[s]oliciting, urging, and persuading [a] citizen to vote are the canvasser's speech." 732 F.3d 382, 390 (5th Cir. 2013). Likewise, Defendants misleadingly quote *Democracy N.C.*'s finding that "[d]elivering absentee ballot requests is not expressive conduct." Doc. 113 at 9 (quoting *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 224 (M.D.N.C. Aug. 4, 2020)). There, the court was referring to a restriction on third parties returning completed applications to election offices. 476 F.Supp. 3d at 225. More to the point, *Democracy N.C.* held that "assisting voters in filling out a request form for an absentee ballot is 'expressive conduct' which implicates the First Amendment." *Id.* at 224.

Plaintiffs distribute personalized ballot applications with "intent to convey a particularized [pro-absentee voting] message" and "the likelihood [is] great that the message [is] understood by those who view[] it,"[4] therefore it is expressive

---

[4] Defendants attempt to dispute this by pointing to the experience of one Georgia voter who completed applications despite not intending to vote by mail, *see* Doc. 113 at 8 n. 2. Such anecdotal evidence of an individual voter's confusion is irrelevant. Moreover, the relevant question in "determining whether conduct is expressive" is "whether the reasonable person would interpret it as some sort of message, not whether [the recipient] would necessarily infer a specific message."

conduct protected by the First Amendment. *Texas v. Johnson*, 491 U.S. 397, 404 (1989); Doc. 103-3 ¶¶ 7-11, 17, 63, 68; Doc. 103-4 ¶¶ 2-7, 15-16, 21-22, 38, 46; *see also NetChoice, LLC v. Att'y Gen., Fla.*, No. 21-12355, 2022 WL 1613291, at *9 (11th Cir. May 23, 2022) ("If we find that the conduct in question is expressive, any law regulating that conduct is subject to the First Amendment."). This is particularly true in the electoral context. *See Spence v. Washington*, 418 U.S. 405, 409-10 (1974) (conduct is expressive when the "nature of [the] activity, combined with the factual context and environment in which it [is] undertaken" demonstrate that the "activity [is] sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[]").[5]

Finally, Plaintiffs' distribution of absentee ballot applications is no less protected simply because Plaintiffs maintain their "ability to send their messages about absentee voting" via other means. Doc. 113 at 9; *see also* Doc. 114 at 13-14. In *Meyer*, the Supreme Court rejected precisely this rationale: "That appellees remain free to employ other means to disseminate their ideas does not take their

---

*NetChoice*, 2022 WL 1613291 at *9.

[5] *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* does not lessen the importance of context. 547 U.S. 47 (2006). In *Rumsfeld*, the Court ruled that a law school's refusal to allow military recruiters on campus was ambiguous unless accompanied by speech. *Id.* at 66. Here, however, it is difficult to understand what other plausible understanding attaches to Plaintiffs' distribution by mail of absentee ballot applications.

speech through petition circulators outside the bounds of First Amendment protection." 486 U.S. at 424. In sum, "the First Amendment protects appellees' right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Id.*; *see also California Democratic Party v. Jones*, 530 U.S. 567, 582 (2000) ("We have consistently refused to overlook an unconstitutional restriction upon some First Amendment activity simply because it leaves other First Amendment activity unimpaired."). Defendants' insistence that Plaintiffs can state their support for absentee voting by other means "misses the point." *McCullen v. Coakley*, 573 U.S. 464, 489 (2014). Plaintiffs wish to inform voters of their absentee voting options *and* "provide help in pursuing them" and "believe that they can accomplish this objective only" by interacting with voters directly and providing them with the means to vote absentee. *Id.* (holding that "[w]hen the government makes it more difficult to engage in these modes of [one-to-one] communication, it imposes an especially significant First Amendment burden"). Plaintiffs' communications concerning the fundamental political act of voting warrant at least as much protection as discussions about "whether the trucking industry should be deregulated in Colorado." 486 U.S. at 421.

**b.  The Ballot Application Restrictions Are Content-Based Restraints on Speech Subject to Strict Scrutiny.**

Defendants are wrong about *City of Austin v. Regan National Advertising*.

Doc. 113 at 12-13. That case reiterates the Supreme Court's precedent that "[a] regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed." 142 S. Ct. 1464, 1471 (2022) (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)). The Court differentiated the relevant city code at issue in *City of Austin* from that in *Reed* because the former the "d[id] not single out any topic or subject matter for different treatment . . . [r]ather the City's provisions distinguish based on *location* . . . ." *Id.* at 1472-73 (emphasis added). The Ballot Application Restrictions are not similarly "agnostic as to content." *Id.* Instead, they single out absentee ballot applications for disparate treatment based solely on the substance of those forms.[6] Such discriminatory content-based speech restrictions are subject to strict scrutiny and "presumptively unconstitutional." *Reed*, 576 U.S. at 163; *see also Buckley v. Amer. Const'l L. Found.*, 525 U.S. 182 (1999).

---

[6] In attempting to explain why restrictions are appropriate for absentee ballot application forms but not voter registration forms, Defendants state that "[a]bsentee-ballot applications . . . are more directly connected to the act of voting." Doc. 113 at 14. But that is just the sort of "'singl[ing] out [of] specific subject matter for differential treatment'" that the Court found to be presumptively unconstitutional in *Reed*. *See City of Austin*, 142 S. Ct. at 1471 (quoting *Reed*, 576 U.S. at 169 (finding disparate treatment of signage with ideological, political, and other messages to be a "paradigmatic example of content-based discrimination")).

### c. The Ballot Application Restrictions Curtail Plaintiffs' Associational Activities and are Subject to Strict Scrutiny.

SB 202's restrictions abridge Plaintiffs' association rights. Even if the restrictions do not "deprive [Plaintiffs] of *all* opportunities to associate" with voters and other organizations, the First Amendment prohibits their "significant interference" with Plaintiffs' associational activity. *Kusper v. Pontikes*, 414 U.S. 51, 58 (1973) (emphasis added). For laws "encroach[ing] upon associational freedom," the state must show there is no "less drastic way of satisfying its legitimate interests." *Id*. Defendants' arguments that no associational activities are implicated are meritless.

Plaintiffs' voter engagement communications are associational activities. Plaintiffs use their effective absentee voting advocacy to persuade collective action with their audience, partner with other civic organizations to further their cause, and gain a foothold with voters for further engagement. Doc. 103-3 ¶¶ 7, 35-39; Doc. 103-4 ¶¶ 10-12, 21. SB 202 limits to whom Plaintiffs can communicate, when, and the effectiveness of their assistance, while requiring a misleading disclaimer. Plaintiffs' diminished communications will make their audience less willing to engage, "interfer[ing] with [Plaintiffs'] associational rights by prohibiting them from working with [other] organizations . . . and limit[ing] their ability to associate for the purposes of assisting" their audience. *VoteAmerica*,

2021 WL 5918918 at *7; *Priorities USA*, 462 F. Supp. 3d at 812 (distributing absentee applications "necessarily involve[s] political communication and association"); *Hargett*, 400 F. Supp. 3d at 720 (same for voter registration).

*NAACP v. Button* is illustrative. 371 U.S. 415 (1963). There, the Court blocked a law that restricted NAACP's associational activity informing and soliciting clients for litigation. *Id.* at 421, 434. The law violated NAACP's First Amendment rights because it prevented them from associating to persuade others to action and using those associations to build relationships and bring litigation, their chosen means for affecting change. *Id.* at 429–31, 437. Similarly, Plaintiffs persuade their audience to action to request a ballot and use their communications to build relationships to increase absentee voting, Plaintiffs' chosen means for affecting change. Doc. 103-3 ¶¶ 7, 20, 35-39; Doc. 103-4 ¶¶ 10-12, 21.

Defendants ignore these cases and rely wholly on *Boy Scouts of America v. Dale* to prescribe other ways they believe Plaintiffs can engage in association. Doc. 113 at 24 (citing 530 U.S. 640, 648 (2000)). But far from undermining Plaintiffs' contentions, *Boy Scouts* holds that courts must "give deference to an association's view of what would impair its expression." 530 U.S. at 653. And Plaintiffs' associational rights are "protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference" on their "means

11

of communicating" to further their associations. *Healy v. James*, 408 U.S. 169, 181-83 (1972). Defendants' effort to recast Plaintiffs' activities or offer a different option to communicate contradicts Plaintiffs' agency in forming their political associations and the utmost First Amendment protection of that activity.

### d. Neither *Anderson-Burdick* nor *Citizens United* Standards Apply Here.

Because the Ballot Application Restrictions limit core political expression and associational activity—and do so in a content-based way—strict scrutiny applies. Seeking to avoid this inevitability, Defendants and Intervenors invoke *Anderson-Burdick* and a form of exacting scrutiny specific to campaign finance cases. *See, e.g.*, Doc. 113 at 12 & n.13; Doc. 114 at 10. These arguments fail.

First, applying *Anderson-Burdick* is not "a given merely because the challenged law pertains to elections." *Hargett*, 400 F. Supp. 3d at 722. Instead, the doctrine applies, and permits lesser scrutiny, for laws that are both (1) "nondiscriminatory," and (2) impose insubstantial restrictions on a right of "access to the ballot." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Here, Plaintiffs challenge discriminatory restrictions that limit core political speech *advocating for* voting. These are no "ordinary election restriction[s];" they "involve[] limitation[s] on political expression subject to exacting scrutiny." *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 345-46 (1995) (quoting *Meyer*, 486 U.S. at 420). Such

laws "go beyond merely the intersection between voting rights and election administration, veering instead into the area where the First Amendment has its fullest and most urgent application." *Hargett*, 400 F. Supp. 3d at 722 (citation omitted).

Second, Defendants claim that the proper exacting scrutiny analysis for the Disclaimer Requirement is whether there is a "substantial relation" to a "sufficiently important government interest." Doc. 113 at 6 n.1, 22 (quoting *Citizens United v. FEC*, 558 U.S. 310 (2010)). Reliance on this less stringent standard—established and applied only in campaign finance and donor disclosure cases—is misplaced. Although both doctrines use the words "exacting scrutiny," the *Meyer-Buckley* test for core political speech is stricter, upholding "the restriction only if it is narrowly tailored to serve an overriding state interest," *McIntyre*, 514 U.S. at 347. Defendants provide no basis for their novel expansion of the *Citizens United* standard beyond campaign finance law nor explain why *Meyer-Buckley* does not apply. The *Meyer-Buckley* scrutiny that protects core political speech applies over any strained analogy to campaign finance law.

### e. The Ballot Application Restrictions Fail Under Any Heightened Scrutiny.

Applying strict scrutiny, the challenged SB 202 provisions are unconstitutional because each restriction is not narrowly tailored to serve an actual,

legitimate State interest. But even if Defendants' preferred analyses applied to warrant a form of intermediate scrutiny (they do not), Plaintiffs still proved their likelihood of success on the merits.

### i. The Mailing List Restriction is Not Narrowly Tailored Nor Rationally Related to the State's Interests.

Defendants argue that the Mailing List Restriction addresses voter confusion and concerns about fraud that arose from voters receiving multiple applications. Defs.' Br. at 17-18.[7] But they vastly overstate the record of voter confusion and

---

[7] To the extent Defendants intend to argue that the Mailing List Restriction is supported by administrative burdens, that argument also fails. Defendants misleadingly represent the increase in duplicate applications and cancelled absentee ballots at the polls in 2020. Those increases are largely explained by the multi-fold increase in absentee ballot usage in 2020 overall. Absentee ballot usage increased from about 220,000 voters in 2018 to over 1.3 million voters in 2020. *Compare* Georgia Sec'y of State, November 6, 2018 Governor Election Results, https://results.enr.clarityelections.com/GA/91639/Web02-state.221451/#/cid/20000, *with* Georgia Sec'y of State, November 3, 2020 Presidential Election Results by Vote Type, https://results.enr.clarityelections.com/GA/105369/web.264614/#/detail/5000. And Defendants have failed to establish that the small increase of these occurrences as a percentage of total absentee ballots was due to Plaintiffs' actions rather than the confusion that naturally arose from so many *new* absentee voters navigating the process for the first time. *See VoteAmerica v. Schwab*, 2021 WL 5928918 (Dec. 15, 2021) ("The 2020 election cycle was not similar to the election cycles in 2008, 2012 or 2016 and the record does not address the obvious reasons for the lack of similarity."). Finally, any minor administrative burden cannot justify the restriction's First Amendment harms. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 218 (1986) ("[T]he possibility of future increases in the cost of administering the election system is not a sufficient basis here for infringing

have failed to demonstrate that the Mailing List Restriction is tailored to address those concerns. Defendants' unsupported claims about "the strength of the governmental interest" fail to "reflect the seriousness of the actual burden on First Amendment rights." *Doe v. Reed*, 561 U.S. 186, 196 (2010). The State has not "demonstrate[d] that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier," and thus they cannot satisfy strict scrutiny. *McCullen*, 573 U.S. at 495.

First, far from "amply demonstrate[d]" by the record, Doc. 113 at 18, the evidence Defendants submit on the issue of duplicate applications comprises less than twenty hand-picked, unsubstantiated, and hearsay complaints, most of which merely complain about receiving multiple applications,[8] rather than expressing any confusion. *See* 113-2, Ex. 1-D.[9] Freedom of speech "may not be withdrawn even

---

appellees' First Amendment rights.").

[8] Or, in some cases, ask to remove their registration because the mailing alerted them that they were still on the rolls after moving out of state. *See* 113-2 at 62.

[9] With respect to "concerns of fraud," the State cannot seriously contend that it is justified in restricting Plaintiffs' speech simply because a handful of Georgians have unfounded (and often conspiratorial) beliefs about voter fraud. Defendants do not suggest that these complaints were even investigated, let alone led to any finding of wrongdoing. Defendant Secretary of State Raffensperger has stated that his office has "never found systemic fraud" pertaining to elections in Georgia and that the "vast majority of claims" of widespread fraud made by the public, the media, and even lawmakers are "simply unfounded." *See* Ex1-D-E.

if it creates [a] minor nuisance for a community[.]" *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943). If Plaintiffs' mailer recipients find the content "objectionable," they may "escape exposure . . . simply by transferring the [mailer] from envelope to wastebasket." *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 542 (1980); *see also Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 72 (1983). In any event, a handful of examples is hardly sufficient evidence to justify the Mailing List Restriction's severe effects, especially considering the over 575,000 Georgians who submitted an application provided as part of Plaintiffs VPC and CVI's mailings, *see* Lopach Decl. ¶ 25.

Second, this provision is not narrowly tailored to achieve the State's interests. While the voter complaints Defendant rely on relate to duplicate mailings, the Mailing List Restriction does not limit the number of applications Plaintiffs may send to any given individual. And to the extent the State asserts any actual anti-fraud interest, the State has failed to show that a voter's receipt of multiple absentee ballot applications *actually* leads to any fraud. Georgia has robust preexisting laws to prevent the distribution of multiple ballots to the same voter and other forms of potential fraud. *See* Doc. 103 at 32.

### ii. The Prefiling Prohibition is Not Narrowly Tailored Nor Rationally Related to the State's Interests.

The Prefiling Prohibition prohibits VPC/CVI from engaging in their reliable

practices of personalizing their application communications with the recipients' information drawn from the Georgia voter file. O.C.G.A. § 21-2-381(a)(1)(C)(ii). Prefilling is VPC/CVI's most effective means of conveying its message because it simplifies the process for voters and election officials alike, ensuring the information is legible and matches the voters' record on file. *Id.; see also* Green Report, Doc. 103-5, at 4-6, 8-9; Green Rebuttal Report, Ex. 2, at 1, 8-14.[10] Viewed against the harms to Plaintiffs, SB 202's wholesale ban on prefilling is not sufficiently tailored to serve any actual and legitimate state interest.

*First*, Defendant Raffensperger disavowed integrity problems with the 2020 election and Defendants cannot defend SB 202 solely on the basis of unsubstantiated and conspiratorial complaints. *See supra* at 16 n.10.

*Second,* Plaintiffs personalize their communications with prefilled information from the most reliable available source: Georgia's own voter

---

[10] Defendants' contentions, Doc. 113 at 25-2, that Dr. Green is unreliable are both unpersuasive and improperly raised. Absent Defendants "seek[ing] exclusion of the evidence under" Rule 702, the Court considers Dr. Green's credible and reliable reports and testimony "to the extent appropriate given the character and objectives of the injunctive proceeding." *Black Voters Matter Fund v. Raffensperger*, 478 F. Supp. 3d 1278, 1295 (N.D. Ga. 2020) (citations and quotations omitted). Regardless, Defendants' arguments are unfounded, largely repeating their expert's contrary unsupported opinions and ignoring Dr. Green's responses addressing each point. *See* Ex. 2.

registration file. Doc. 103-3 ¶¶ 15, 18, 22, 61-64. Purported inaccuracies in Plaintiffs' personalized applications, to the extent they exist, are a consequence of the State's mismanagement of its voter file. Indeed, some complaints demonstrate that Plaintiffs' mailings alerted voters who moved that they improperly remained on the rolls in Georgia, spurring them to rectify that problem. *See, e.g.,* Doc. 113-2 at 25, 62. It is Defendants who can improve accuracy through means that do not infringe on Plaintiffs' First Amendment rights. *See* Ga. Code § 21-2-234; 52 U.S.C. § 20507. Also, Georgia already has sufficient legal safeguards ensuring no voter who receives a purportedly inaccurate prefilled application can improperly vote. *See supra* 17.

*Third*, Defendants' allegations of "countless complaints" related to personalized applications, Doc. 113 at 16, are unsupported. VPC/CVI sent millions of communications that persuaded over 650,000 Georgians to apply for an absentee ballot during the 2020 election cycle. Doc. 103-3 ¶ 25. In response, Defendants submit less than two dozen unsubstantiated complaints (many of which are conspiratorial), only four of which facially relate to prefilling of applications. Doc. 113-2, Ex. 1-A. Such flimsy evidence hardly justifies a complete ban on First Amendment activity that relies on the State's own information.

### iii. The Disclaimer Provision is Not Narrowly Tailored Nor Substantially Related to the State's Interests.

While Defendants and Intervenors propose improper tests, *see supra* Sections I.a-d, all parties agree that the Disclaimer Provision compels speech and is subject to heightened scrutiny. *See* Doc. 113 at 6, 26; Doc. 114 at 10, 17. The Disclaimer Provision—which mandates an objectively false and misleading statement—cannot meet any level of First Amendment scrutiny.

Remarkably, *nowhere* in Defendants' brief do they attempt to defend the very portion of the Disclaimer to which Plaintiffs object: the requirement to print a disclaimer on the "Application for Georgia *Official* Absentee Ballot" created by the Secretary of State that states it is "NOT an official government publication." *See* O.C.G.A. § 21-2-381(a)(1)(C)(ii) (emphasis added); *see also* Doc. 103 at 27 ("Plaintiffs do not object to informing their audience of accurate information about their communications."). Defendants are therefore wrong that "[t]he Disclaimer Provision here merely requires Plaintiffs to identify themselves, rather than the State, as the source of the absentee-ballot application, and to specify that the application is not a ballot." Doc. 113 at 21. Defendants also do not explain why the statement that the application is "NOT a ballot" is not on the absentee ballot application itself, rather than included as a disclaimer only when the application is sent by a third party. *See Riley v. Nat'l Fed. of the Blind of N.C.*, 487 U.S. 781, 800

(1988) (concluding that a compelled disclosure was unconstitutional because the government could "itself publish ... the disclosure").

The absurdity of the Disclaimer Provision is underscored by Defendant Raffensperger's publication of a version of the "Application for Georgia *Official* Absentee Ballot" with the required disclaimer that third parties can use to comply with SB 202. Ex.1-F. Secretary Raffensperger now has on his website a document that his office publishes; stamped with his seal; that states it will be used "for official government purposes,"; and also states "This is NOT an official government publication[.]" *Id.* This is the disclaimer that Defendants defend *solely* on the grounds that it will "prevent[] voter confusion." Doc. 113 at 22-23. To state that proposition is sufficient to refute it. None of the alleged instances of voter confusion proffered by Defendants[11] would be remedied by falsely telling recipients that the official absentee ballot application is not an official government publication. This language is far from narrowly tailored.

Plaintiffs strongly object to the government compelling them to disseminate

---

[11] The only documentary evidence Defendants proffer on this issue is one election official's musing that Plaintiff CVI's mailer "seems very misleading" and two emails from voters asking whether absentee ballot applications *should* only be sent by the government. *See* Doc. 113-2, Ex. E. But in neither email were the voters confused about the source of the mailers. And while it is unclear why Ms. Hodges' believed the mailer was misleading, she also understood its source.

such misleading speech that directly undermines their pro vote-by-mail message. Doc 103-3 ¶¶ 67-69; Doc. 103-4 ¶ 38. And Defendants' addition of language asking voters to report duplicate copies of the application as "fraud" (even though the Law does not forbid duplicates) immediately preceding the disclaimer only heightens Plaintiffs' objections. *See* Green Rebuttal, Ex. 2 at 7 ("[T]his juxtaposition makes the disclaimer more conspicuous and will cause greater suspicion among recipients. In effect, voters are 'primed to think about fraud immediately before encountering the disclaimer warning them about unofficial forms from nongovernmental entities.").

## II.    Plaintiffs Will Suffer Irreparable Harm.

Defendants assert that the timing of Plaintiffs' Motion "contradict[s] their claim that their injury is irreparable or even genuine." Doc. 113 at 29.   But Plaintiffs filed this Motion now because their ongoing harm became imminent— absent preliminary relief, Plaintiffs will be unable to effectively communicate in Georgia for the November 2022 elections. Doc. 103-3 ¶¶ 53-57; Doc. 103-4 ¶¶ 26-27.   Filing sooner would have been inappropriate where Plaintiffs could not have shown their harm was imminent, the Court decided Defendants' Motion to Dismiss in mid-December 2021, discovery was not open until February 2022, and the

parties have been actively engaged in factual and expert discovery since.[12]

Thus, *Wreal, LLC v. Amazon.com*, on which Defendants primarily rely, is inapposite. Doc. 113 at 29 (citing 840 F.3d 1244, 1248 (11th Cir. 2016)). In *Wreal,* the plaintiff not only delayed in filing a preliminary injunction motion but also also failed to conduct any discovery and "made just routine, case-management filings in the district court." 840 F.3d 1244 at 1247. Here, Plaintiffs pursued discovery as soon as it was available and pursued preliminary relief at a juncture that accorded with the circumstances. Under these circumstances, Defendants cannot seriously contend that Plaintiffs "attempt to short-circuit the ordinary litigation process," Doc. 113 at 30.[13]

---

[12] Because Plaintiffs waited for their claims to ripen, they were able to narrow their claims. For example, VoteAmerica is not asserting a prefilling claim because Defendants issued a regulation clarifying the Prefilling Prohibition's reach.

[13] Underscoring Plaintiffs' timeliness, Defendants last year in a related SB 202 case challenged the plaintiffs' ability to seek preliminary relief because there was "no injury that is certainly impending or substantially likely to occur." Defendants' Response in Opposition, *Coalition for Good Governance v. Kemp*, 1:21-CV-02070-JPB, 2021 WL 7501466 (N.D. Ga. June 24, 2021). Defendants' attempt to set up a goldilocks problem, where Plaintiffs must seek relief at a precise yet unknown "right" time, should be rejected. *See DNC v. Bostelmann*, 466 F. Supp. 3d 957, 963 (W.D. Wis. 2020) (recognizing paradox between *Purcell* and ripeness, and rejecting arguments); *Fitzgerald v. Alcorn*, 285 F. Supp. 3d 922, 942 (W.D. Va. 2018) (same).

**III.** **The Balance of the Equities Weighs in Plaintiffs' Favor, and a Preliminary Injunction Is Not Adverse to the Public Interest.**

The balance of the equities and the public interest weighs in favor of a preliminary injunction.

First, Defendants' asserted harm that they are unable to enforce their own statutes fails because the government has no legitimate interest in enforcing an unconstitutional First Amendment restriction. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)).

Second, Defendants argue that returning to the status quo will "insert[] chaos into the electoral system on the eve of an election,"[14] thereby harming the State and the public. Doc. 113 at 31, 34 (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)).[15]

---

[14] Intervenors ask the Court to deny the injunction under the *Purcell* principle. Doc. 114 at 2-10. But as political parties, Intervenors cannot assert the state interests contemplated by *Purcell*. *Republican Nat'l Comm. v. Common Cause Rhode Island*, 141 S. Ct. 206, 207 (2020) (denying a stay under *Purcell* and holding that republican intervenors "lack a cognizable interest in the State's ability to enforce its duly enacted laws"). The Court should disregard Intervenors' arguments on behalf of their political candidates that purport to advance the State's *Purcell* interests.

[15] Defendants emphasize the recent stay order in *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1372 (11th Cir. 2022), but reliance on this decision is stacking non-binding ruling on non-binding ruling. The *League* court noted that the stay posture "precludes the opinion from having an effect outside that case." *Id.* at 1369 n.1. And it relied on a concurrence in another non-binding stay decision in *Merrill v. Milligan,* 142 S. Ct. 879 (2022). To the extent

*Purcell* requires district courts to consider the timing of elections in granting preliminary relief, but it "is not a magic wand that defendants can wave to make any unconstitutional election restriction disappear so long as an impending election exists." *People First of Alabama v. Sec'y of State for Alabama*, 815 F. App'x 505, 514 (11th Cir. 2020); *accord Coalition for Good Governance v. Kemp,* 1:21-CV-02070-JPB, 2021 WL 2826094, at *3 (N.D. Ga. July 7, 2021) (*Purcell* "does not function as the bright line rule Defendants propose."). Rather, courts flexibly consider the impact on election administration of enjoining laws ahead of an election. *See New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020); *Coalition for Good Governance,* 2021 WL 2826094, at *3.

Here, the challenged laws affect speech and association activities that occur outside the processes involving election officials processing applications, voters casting ballots, and officials counting ballots. Defendants' evidence shows that Plaintiffs' relief would not be disruptive. An injunction would not change the process through which election officials process absentee ballot applications or ballots and with which the public has been familiar for years. Germany Decl. ¶¶

---

these opinions apply, they reaffirm that the *Purcell* bar is not "absolute." *Id.* at 881. Plaintiffs' clear-cut First Amendment claims meet the requirements that allow for injunctive relief.

18, 47, 52-54 (acknowledging that Defendants have had a method for processing absentee ballot applications sent by third parties since 2018). Defendants fail to demonstrate why election officials would need any additional training since nothing about a preliminary injunction would change the officials' processing of applications. The only "training" needed would be for Defendants to advise election officials that they need not report any alleged violations of the Absentee Ballot Applications. The timing here is not too narrow. The absentee ballot application window will open months after the Court resolves this Motion, with the actual election over five months away. This provides ample time for officials and the public to simply revert to the status quo ante on these discrete issues.

Finally, the public interest favors an injunction. Defendants cannot contend that the public interest is served because Plaintiffs are only allowed to send communications to assist voters that will be less effective, muted, and misleading. No public interest is served if Plaintiffs must muffle their speech under threat of cost-prohibitive fines and criminal penalties. *See KH Outdoor*, 458 F.3d at 1272 ("[I]t is always in the public interest to protect First Amendment liberties").

## **CONCLUSION**

For these reasons, the Court should grant preliminary injunctive relief.

Respectfully submitted,                                              June 3, 2022

/s/ Danielle Lang
Danielle Lang*
Jonathan Diaz*
Alice Huling*
Hayden Johnson*
Valencia Richardson*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, D.C. 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
ahuling@campaignlegalcenter.org
hjohnson@campaignlegalcenter.org
vrichardson@campaignlegalcenter.org

Robert B. Remar
(Ga. Bar No. 600575)
Katherine L. D'Ambrosio
(Ga. Bar No. 780128)
SMITH, GAMBRELL & RUSSELL, LLP
1105 W. Peachtree NE, Suite 1000
Atlanta, GA 30309
(404) 815-3500
rremar@sgrlaw.com
kdambrosio@sgrlaw.com

*Admitted pro hac vice


Counsel for Plaintiffs

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Times New Roman 14-point font, approved by the Court in L.R. 5.1(B).

*/s/ Danielle Lang*
Danielle Lang
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all counsel of record in this matter using the Court's electronic filing system.

*/s/ Danielle Lang*
Danielle Lang
*Counsel for Plaintiffs*
