# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| VOTEAMERICA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> *Intervenor-Defendants*. | Civil Action No.: <br> 1:21-CV-1390-JPB |

## STATE DEFENDANTS' STATEMENT OF MATERIAL FACTS ABOUT WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Civil Rule 56.1(B)(1), State Defendants submit the following statement of material facts as to which there is no genuine dispute.

## I.  Absentee Voting in Georgia

1. Georgia maintains an absentee-ballot application on its website, which is accessible by any voter.  *See* Ga. Sec'y of State, *Online Voter Registration, Absentee Ballot Request*.[1]

2. Georgia also maintains "A Guide for Registered Voters" on its website, which includes a section titled: "An Overview of Georgia's Absentee Voting Process."  *See* Elections Div., Ga. Sec'y of State, *A Guide for Registered Voters* (Mar. 30, 2022).[2]

3. This Guide informs voters how to apply for an absentee ballot, how to complete it, and how to submit it.  *See id.*

4. Since 2005, Georgia has had no excuse absentee voting, allowing any qualified voter to apply for an absentee ballot. Germany Depo. 179:8–9.

5. The Election Division of Georgia's Secretary of State's Office also provides voters with a phone number and an e-mail address for use with questions about absentee-ballot applications.  *See* https://sos.ga.gov/how-to-guide/how-guide-voting.

---

[1] https://securemyabsenteeballot.sos.ga.gov/s/.
[2] https://sos.ga.gov/sites/default/files/forms/Absentee_Voting_In_Georgia_Rev_3-30-22.pdf.

6.     When an individual submits an absentee-ballot application and that application is processed, the individual's information is updated on the State's absentee voter file to reflect that he or she has requested a ballot. Germany Depo. 47:3–8; Day 2 Tr. 73:3–22.

7.     During an election cycle, that file is updated daily and is publicly available.  Day 2 Tr. 73:3–22.

## II. Absentee-Ballot Applications Sent by Third-Party Organizations

8.     For several election cycles, third-party organizations like Plaintiffs Voter Participation Center ("VPC") and the Center for Voter Information ("CVI") sent absentee-ballot applications to voters in many states, including Georgia.  Lopach Depo. 42:8–11, 62:4–12.

9.     In each such mailing, CVI and VPC send an absentee-ballot application and a cover letter that explains why they believe absentee voting is important and encouraging the recipient to complete and return the application.  Lopach Depo. 63:2–7, 64:13–65:4.

10.    Plaintiffs' cover letters also include instructions for how to complete and return the application.  *See* Ex. B.

11.    CVI and VPC have never sent absentee-ballot applications without a cover letter. Lopach Depo. 62:4–63:7.

12. Sending absentee-ballot applications without a cover letter would be cheaper. Lopach Depo. 70:4–11.

13. Plaintiffs' cover letters have always included the name of the organization sending the package, including contact information. Lopach Depo. 70:20–71:4.

14. That contact information includes both a phone number, an email address, and a URL directing recipients to the website of the group that sent the package. Lopach Depo. 71:10–11, 72:2–3, 73:3–5.

15. VPC sends its mailings to the "New American Majority"—its name for young voters, voters of color, and unmarried women. Lopach Depo. 11:15–19.

16. CVI focuses on engaging voters who "would like to see people of color, young people, and unmarried women turning out in elections … at rates equal to the general population." Lopach Depo. 12:12–16.

17. CVI and VPC track responses to their mailings with nearly daily updates. Lopach Depo. 164:11–21.

18. In more recent election cycles, CVI and VPC began pre-filling those applications with what they believed was the voter's personal information. Lopach Depo. 112:8–13.

19. That information was often incorrect. Lopach Depo. 127:20–128:2, 129:14–19.

20. CVI and VPC use voter information obtained from third-party data vendors. Lopach Depo. 90:18–91:16; 126:15–127:12.

21. In a given election cycle, CVI and VPC will obtain voter data from its vendors "at least once, possibly twice." Lopach Depo. 133:4–8.

22. These vendors have provided CVI and VPC with incorrect voter information, which resulted in CVI and VPC not pre-filling applications for multiple mailings. Lopach Depo. 127:20–128:17.

23. Additionally, CVI and VPC routinely sent multiple absentee-ballot applications to the same voters in Georgia. Lopach Depo. 109:20–110:15, 111:6–12.

24. Although Plaintiff sent multiple waves of absentee-ballot applications, the largest number of voters respond to the first wave. Lopach Depo. 147:12–19.

25. Recipients of a mailing from either Plaintiff group can opt out of future mailings online, by phone, and possibly by email. Lopach Depo. 101:22–102:5.

26. Opting out of communications from one Plaintiff group (CVI or VPC) also opts a person out of the other group's communications. Lopach Depo. 103:14–21.

27. To ensure that voters who have opted out do not receive subsequent mailings, the two Plaintiff groups review later mailings against the various removal lists. Lopach Depo. 106:3–10.

28. The comparison is made both by contractors and by internal data staff and happens at least twice: "one at the beginning of compiling a list and two, at the end of compiling a list prior to a list being sent to the printer." Lopach Depo. 106:11–107:3.

### III. Voters Complain About Third-Party Absentee-Ballot Applications

29. Some recipients contact CVI and/or VPC to complain about the mailings and to request removal from future mailing lists. Day 1 Tr. 84:13–24; Lopach Depo. 102:19–103:12, 153:15–154:5.

30. Recipients also contacted the Georgia Secretary of State's Office with complaints and questions about absentee-ballot applications received from third-party organizations. *See* Exs. G, H, M (examples of complaints); Germany Depo. 17:21–22.

31. Indeed, CVI and VPC acknowledge that their mailings can "create more work for local election officials." Day 1 Tr. 119:23–25.

32. Complaints are sent to the Secretary of State's office in various ways, including by phone, by web forms, and by email sent to voterfraudalerts@sos.ga.gov. Day 2 Tr. 8:11–25.

33. Complaints can also be sent to the State Election Board ("SEB") in a number of ways, including by phone or email. Mashburn Depo. 85:6–18.

34. Complaints are also submitted to county election offices. Day 2 Tr. 9:14–16.

    **A.**    **Voters express concern about the source of the absentee-ballot applications.**

35. One category of complaints the State received from voters was "a lot of confusion" about whether the applications sent by third-party groups came from the State. Mashburn Depo. 90:10–25; Ex. M.

36. This occurred even when a return address of a third-party group was included, as voters were confused about why the Secretary of State was sending them an absentee-ballot application. Mashburn Depo. 90:10–23.

37. Those complaints included questions about who sent the absentee-ballot applications and whether they were forms that needed to be filled out to vote. Day 2 Tr. 13:12–15.

38. This led to "a lot of calls to counties and to the state." Day 2 Tr. 13:15.

**B.  Voters express concern about receiving duplicate absentee-ballot applications.**

39. A second category of complaints the State received from voters related to voters having received multiple absentee-ballot applications complained that they were receiving multiple ballots. Mashburn Depo. 84:4–6, 91:2–13; Kidd Depo. 183:7–184:13; Ex. H.

40. The SEB received "so many calls" from voters concerned with fraud after receiving what they believed to be multiple ballots. Mashburn Depo. 83:20–84:4.

41. Some voters who received third-party absentee-ballot applications after they had already requested a ballot were concerned that there was a problem with their initial request. Day 2 Tr. 33:9–17; Mashburn Depo. 91:10–12.

42. One voter, Brian Pollard, expressed concern about fraud after he received 5 absentee-ballot applications from multiple third-party groups for the 2021 Senate runoff. Germany Decl. ¶ 41(a).

43. Another voter, Sheree Muniz, expressed concerns about fraud after she received three absentee-ballot applications from a group called America Votes. Germany Decl. ¶ 41(b).

44. A third voter, Matthew Kirby, expressed concern about fraud after he received multiple absentee-ballot applications during the 2021 Senate runoff. Germany Decl. ¶ 41(c).

45. Another voter, Peggy Johnson, expressed concerns about fraud *and* harassment after receiving multiple unsolicited absentee-ballot applications. Germany Decl. ¶ 41(d).

46. Another member of the General Assembly, Representative Barry Fleming, heard from voters who thought that they had received multiple absentee ballots. Tr. of Hr'g on Ga. SB 202 before Special Comm. on Election Integrity at 16:5–13 (Feb. 22, 2021) (attached as Ex. F to Germany Decl. [ECF No. 113-2]).

47. Representative Rick Williams said during the legislative hearings on SB 202 that he received six absentee-ballot applications. Tr. of Hr'g on Ga. SB 202 before Special Comm. on Election Integrity at 52:12–19 (Feb. 4, 2021) (attached as Ex. F to Germany Decl. [ECF No. 113-2]).

48. In many instances, voters were worried that these multiple applications presented an open invitation for voter fraud—a concern

9

exacerbated by voters believing that the *applications* were *ballots*, each of which could be cast. Germany Decl. ¶ 42; Day 2 Tr. 20:3–5; Kidd Depo. 183:7–184:13.

49. Moreover, voters who received multiple applications often returned multiple applications. Germany Depo. 51:2–22.

50. In some instances, they did so even though they did not intend to vote by absentee ballot. Germany Decl. ¶ 43; Day 2 Tr. 28:12–16, 42:16–22; Germany Depo. 199:21–25.

51. This required elections officials to divert their finite resources to processing many unnecessary absentee-ballot applications. Day 2 Tr. 28:16–21.

52. Then, on Election Day, officials were required to process many ballot cancellations when voters who had submitted absentee-ballot applications showed up to vote in person, leading to longer lines. Day 2 Tr. 28:12–29:7, 29:25–30:4.

53. For the 2020 general election, for instance, there were 40,694 absentee-ballot applications cancelled by voters, compared with only 5,472 such cancelled applications during the 2018 general election, and 3,170 cancelled applications during the 2016 general election. Germany Decl. ¶ 31.

### C. Voters express concern about receiving incorrectly pre-filled absentee-ballot applications.

54. A third category of complaints the State received related to inaccuracies in pre-filled applications since before 2020. Germany Depo. 181:7–12; Ex. G.

55. The Secretary of State's Office has "receive[d] … complaints from voters complaining that these applications left the door open to fraud and suggesting they may or may not continue participating in the electoral process." Day 2 Tr. 22:4–14.

56. The SEB also received a "giant wave of complaints" from voters who received applications "for people that used to live" at their home but no longer do, applications that had women's "maiden name[s]," applications "for [a] dead relative," and even an application for "some cat." Mashburn Depo. 88:16–89:15.

57. A complaint was submitted in Georgia after a voter received a prefilled application with the wrong middle name. Day 2 Tr. 18:19–20; Germany Decl. ¶ 23(a).

58. Another complaint was submitted after a voter received a pre-filled application from someone who did not live at her address, causing her to worry about "rampant fraud." Germany Decl. ¶ 23(b).

11

59. One voter expressed concerns that someone was voting for him in Georgia after he received absentee-ballot applications from the Democratic Party of Georgia even though he had been a Florida resident for years. Germany Decl. ¶ 23(c).

60. Another voter reported that she received multiple absentee-ballot applications from, among others, VPC that included "false voter information." Germany Decl. ¶ 23(d).

61. Another voter received a partially pre-filled absentee-ballot application for her husband who had been dead for seven years. Germany Decl. ¶ 23(e).

62. A complaint was submitted after "at least three pre-filled applications for absentee ballots from the Center for Voter Information" were sent to a voter who, because of those applications, was concerned about fraud. Day 2 Tr. 19:4–13.

63. That complaint came from a Georgia State Patrol officer who was worried about fraud after Georgia State Patrol itself received absentee-ballot applications from CVI that included information for someone with no affiliation with the patrol. Germany Decl. ¶ 23(f).

64. The applications received by the Georgia State Patrol included different variations of the same name. Germany Decl. ¶ 23(f).

65. A complaint was submitted after a voter, concerned about potential fraud, "received mail to my address with someone else's name … from the Voter Participation Center." That voter received "six applications in the mail for absentee ballots that [she] did not request." Day 2 Tr. 19:25–20:5.

66. Representative Barry Fleming explained during the legislative hearings on SB 202 that "a lot of those [pre-filled absentee-ballot applications] were prefilled out incorrectly, and it caused a lot of problems came into the boards of elections." Tr. of Hr'g on Ga. SB 202 before Special Comm. on Election Integrity at 17:3-8 (Feb. 22, 2021) (attached as Exhibit H to Germany Decl. [ECF No. 113-2]).

67. One witness, Caroline Garcia, agreed with Representative Fleming at the legislative hearings that pre-filled absentee-ballot applications quite often included the wrong information. Tr. of Hr'g on Ga. SB 202 before Special Comm. on Election Integrity at 23:3-9 (Mar. 18, 2021) (attached as Exhibit H to Germany Decl. [ECF No. 113-2]).

68. The State received many other similar complaints. *See* Ex. G.

### IV. The Challenged Provisions of SB 202 Respond to These Concerns.

69. The Pre-Filling Prohibition prohibits all but "a relative authorized to request an absentee ballot for such elector or a person signing as assisting

an illiterate or physically disabled elector" from "send[ing] any elector an absentee ballot application that is prefilled with the elector's required information." O.C.G.A. § 21-2-381 (a)(1)(C)(ii).

70. The Pre-Filling Prohibition does not apply to web-based tools and applications that allow voters themselves to input their own personalized information into an absentee-ballot application. Ga. Comp. R. & Regs. 183-1-14-.12(2); Germany Depo. 100:1–5.

71. The Pre-Filling Prohibition does not prevent anyone from pre-filling the election date on absentee-ballot applications. Day 2 Tr. 17:15–23.

72. "[E]ncouraging people to fill out forms by themselves" results in "vanishingly low" "error rates." Day 1 Tr. 209:25–210:3.

73. The Anti-Duplication Provision prohibits anyone other than the "Secretary of State, election superintendents, boards of registrars, and absentee ballot clerks" from sending absentee-ballot applications "to individuals who have … already requested, received, or voted an absentee ballot in the primary, election, or runoff." O.C.G.A. § 21-2-381(a)(3)(A).

74. The Anti-Duplication Provision requires anyone but the exempted groups listed above seeking to send an absentee-ballot application to "compare its mail distribution list with the most recent information available about which electors have requested, been issued, or voted an absentee ballot in the

14

primary, election, or runoff and shall remove the names of such electors from its mail distribution list." O.C.G.A. § 21-2-381(a)(3)(A).

75. Anyone who follows the requirement of the preceding paragraph is not liable for violating the Anti-Duplication Provision if they "relied upon information made available by the Secretary of State within five business days prior to the date such applications are mailed." O.C.G.A. § 21-2-381(a)(3)(A).

76. Some printers can update a data file and mail absentee-ballot applications within a five-business-day window. Day 2 Tr. 137:4–6.

77. That is particularly true if the printer is a "seamless entry firm" that both produces the mail, processes the paperwork, and enters it into the mail system without actually "bring[ing] it to the post office to get it checked in and technically mailed." Day 2 Tr. 135:18–136:6

78. The Anti-Duplication Provision does not apply to web-based tools and applications that allow voters themselves to initiate the process leading to the receipt of an absentee-ballot application because the Secretary of State does not consider third parties responding to voter requests for an application online to be "sending [a] voter an application." Germany Depo. 100:11–22.

79. Finally, the Disclaimer Provision requires third parties seeking to send absentee-ballot applications to use the form made available by the

Secretary of State and to "clearly and prominently disclose" the following disclaimer:

> This is NOT an official government publication and was NOT provided to you by any governmental entity and this is NOT a ballot. It is being distributed by [insert name and address of person, organization, or other entity distributing such document or material].

O.C.G.A. § 21-2-381(a)(1)(C)(ii).

80. The Secretary of State's office created "an application form that third parties could use that had all the required disclaimer language." Germany Depo. 133:11–16.

81. The Disclaimer Provision does not apply to web-based tools and applications that otherwise comply with the law. Germany Depo. 100:7–10.

82. Since SB 202 went into effect, CVI and VPC sent absentee-ballot application mailers to Georgians in the most recent election cycle. Lopach Depo. 65:15–18.

83. Those mailers included the same "contents" as earlier mailers: "a carrier envelope, a cover letter, an application, albeit not prefilled, and a return envelope." Lopach Depo. 162:4–11.

84. The mailing sent to Georgia this year was sent with enough time "to land in Georgia mailboxes on or as close as possible to the first day of

Georgia's Vote by Mail application period," "around August 26th of 2022." Lopach Depo. 162:14–19.

85. Nothing in SB 202 prevents Plaintiffs from sending multiple letters to Georgia voters encouraging them to vote by absentee ballot. Day 2 Tr. 45:19–46:8.

86. Nothing in SB 202 prevents Plaintiffs from sending multiple blank absentee-ballot applications to Georgia voters who have not yet applied for a ballot. Day 2 Tr. 45:19–46:8.

December 13, 2022                    Respectfully submitted,

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Special Assistant Attorney General
Erik Jaffe*
H. Christopher Bartolomucci*

Brian J. Field*
Edward H. Trent*
Joshua J. Prince*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

*Admitted pro hac vice*

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for State Defendants*

18

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(C).

*/s/Gene C. Schaerr*
Gene C. Schaerr