IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VOTEAMERICA, *et al.*,

       *Plaintiffs*,

       v.

BRAD RAFFENSPERGER, in his
official capacity as the Secretary of
State for the State of Georgia, *et al.*,

       *Defendants*,

REPUBLICAN NATIONAL
COMMITTEE, *et al.*,

       *Intervenor-Defendants.*

Civil Action No.: 1:21-CV-1390-JPB

**REPLY BRIEF IN SUPPORT OF STATE DEFENDANTS'
MOTION TO EXCLUDE CERTAIN OPINIONS
OF PLAINTIFFS' EXPERT DONALD P. GREEN, PHD**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.    Dr. Green's Qualifications Do Not Make His Opinions Admissible. ............................................................................................ 4

II.    Dr. Green's Opinions Are Not Based on a Recognized Scientific Methodology, Are Unreliable, and Are Unhelpful to the Trier of Fact. ................................................................................................. 6

      A.    Disclaimer Provision .................................................................. 7

      B.    Prefilling Prohibition ............................................................... 11

      C.    Anti-Duplication Provision ...................................................... 14

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cartwright v. Home Depot U.S.A., Inc.,*
  936 F. Supp. 900 (M.D. Fla. 1996) ....................................................... 7

*City of Tuscaloosa v. Harcros Chems., Inc.,*
  158 F.3d 548 (11th Cir. 1998)............................................................... 3

*Clark v. Takata Corp.,*
  192 F.3d 750 (7th Cir. 1999)................................................................ 5

*Cooper v. Marten Transp., Ltd.,*
  No. 1:10-cv-03044-JOF, 2012 WL 12835704 (N.D. Ga. June 4, 2012),
  *aff'd in part on relevant grounds, rev'd in part on other grounds,*
  539 F. App'x 963 (11th Cir. 2013) ..................................................... 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993).................................................................... 1, 7

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997)........................................................................ 6

*Joiner v. General Elec. Co.,*
  78 F.3d 524 (11th Cir. 1996), *rev'd,* 522 U.S. 136 (1997)............................... 7

*McDowell v. Brown,*
  392 F.3d 1283 (11th Cir. 2004)............................................................. 5

*MidAmerica C2L Inc. v. Siemens Energy, Inc.,*
  25 F.4th 1312 (11th Cir. 2022) ....................................................... 6, 15

*United States v. Frazier,*
  387 F.3d 1244 (11th Cir. 2004)....................................................... 2, 5, 15

*United States v. Perry,*
  14 F.4th 1253 (11th Cir. 2021) ............................................................ 7

**Rule**

Federal Rule of Evidence 702......................................................... 1, 2

**INTRODUCTION**

Plaintiffs ask the Court to ignore its important gatekeeping function as to their expert, Donald P. Green, PhD, simply because the case is set for a bench trial. Resp. 4–5 [Doc. 156]. However, as the Supreme Court explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), that is not how Federal Rule of Evidence 702 works. Indeed, Plaintiffs made the exact *opposite* argument in a similar case just months ago. What remains clear is that, whether in a bench *or* jury trial, Dr. Green's opinions fail to meet the admissibility standard for expert testimony because, as explained in Defendants' Motion [Doc. 150], they are not based on any reliable scientific methodology and fail to satisfy the "helpfulness" standard required by Rule 702 and *Daubert*.

Plaintiffs nevertheless suggest (at 15–21) that Dr. Green's opinion regarding the Disclaimer Provision is admissible simply because of his "decades of experience" and because he relied on a qualitative analysis that, by definition, does not have to meet the standards of a quantitative study. But Dr. Green's experience alone is insufficient for admission of his opinions, especially when he ignores the basic requirements for a valid scientific analysis that he himself says are required. Further, his selection of one response out of five

"unstructured interviews" of random people at MARTA stations hardly qualifies as a valid scientific methodology upon which to reach an opinion.

Plaintiffs likewise suggest (at 21–24) that Dr. Green's opinions regarding the Prefilling Prohibition are admissible because of his experience, the fact that "lots of others do it," and a single study—which, ironically, actually highlights the fallacy of his methodology. Indeed, it is here that the insurmountable leaps of logic Dr. Green asks the Court to make are most glaring, again demonstrating his lack of a reliable methodology.

Finally, Plaintiffs rely (at 24–25) exclusively on Dr. Green's "decades of experience" working with get-out-the-vote groups to suggest that his opinions regarding the Anti-Duplication Provision should be admissible. In doing so, they ignore his complete lack of analysis of the issue, a failure that renders his opinion both unreliable and unhelpful under Rule 702.

## ARGUMENT

The party offering an expert opinion bears the burden of showing, and the Court bears the responsibility of ensuring, that the opinion "meet[s] the standards for admissibility under Rule 702" before it is admitted into evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Here, this requires Plaintiffs to establish that Dr. Green is not only qualified, but that his opinions are based on reliable scientific methodology and would be helpful to

the trier of fact. *Id.* (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Contrary to Plaintiffs' suggestion (at 4–5), this inquiry for admissibility applies regardless of whether the trial will be before a jury or the Court. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1027 (11th Cir. 2014) (upholding the district court's exclusion of plaintiff's expert opinion in bench trial, finding "the district court acted within its considerable discretion when it concluded that Dr. Pacey's testimony would not assist the trier of fact and that her methodology was not sufficiently reliable"). Moreover, even if the Court's "gatekeeping function is not [as] stringent" in a bench trial, "[t]he district court enjoys 'considerable leeway' in making such evidentiary decisions, and will be reversed only if 'the ruling is manifestly erroneous.'" *Pledger v. Reliance Tr. Co.,* No. 1:15-CV-4444-MHC, 2019 WL 4439606, at *4 (N.D. Ga. Feb. 25, 2019) (citations omitted).

While Plaintiffs argue (at 4) that there is "less need for the gatekeeper to keep the gate when [he] is only keeping the gate for himself" (citing *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005)), barely 60 days ago in another case where Plaintiffs sought to exclude the defendants' expert, they correctly argued the exact opposite. In *VoteAmerica, et. al. v. Schwab, et. al.,* Case No. 2:21-cv-02253-KHV (D. Kan), Plaintiffs opposed the suggestion that the *Daubert* gatekeeping function was "unnecessary" in a bench trial by

arguing that "[t]he court must perform this gatekeeping function in a bench trial even though the concern about dubious expert testimony misleading the jury is not present."  Reply Mem. in Support of Mot. Exclude at 3–4, ECF No. 158 (citing *E3 Biofuels-Mead, LLC v. Zurich Am. Ins. Co.*, No. 08-CV-2674-CM, 2013 U.S. Dist. LEXIS 45272, at *2 (D. Kan. Mar. 29, 2013)) (attached as Ex. A). Indeed, as Plaintiffs argued there, should the Court ignore its gatekeeping function, it would turn a bench trial into a "free for all." Ex. A at 4 (citing *New York v. United Postal Serv., Inc.*, No. 15-CV-1136 (KBF), 2016 U.S. Dist. LEXIS 123115, at *2–3 (S.D.N.Y. Sept. 10, 2016)). Because, as reiterated below, Dr. Green's opinions fail the test for admissibility under Rule 702, they should be excluded.

## I.   Dr. Green's Qualifications Do Not Make His Opinions Admissible.

Contrary to Plaintiffs' suggestion (at 6–7), Dr. Green's qualifications and experience cannot, by themselves, make his opinions admissible. That is particularly true because, in this case, Dr. Green chose to ignore the very research methods he claims are critical for a reliable analysis. Am. Rebuttal Rep. at 4 [Doc. 150-3]. Thus, Dr. Green did not, as Plaintiffs suggest (at 7), "appl[y] his experience to the specific facts here."  Rather, he ignored his experience. Further, neither Dr. Green nor Plaintiffs explain why his

experience is somehow sufficient for his expert opinions in this case (at 8), besides his suggestion that his conclusions are obvious.

Dr. Green's use of five "semi-structured" interviews (only two of which met his standards) to get "a sense" of how someone might react when having the disclaimer language pointed out to them hardly qualifies as a scientifically reliable "qualitative" study. TR 219:18–20, 220:18–22 [Doc. 129]; Green Depo. 150:6–13; 162:1–7 [Doc. 150-4]. Besides acknowledging that he is not an expert in "qualitative studies," Green Depo. 20:12–16, 21:2–7, Dr. Green offers nothing to suggest how his "semi-structured interviews" even qualify as a "*qualitative* study," or have any scientific value, to support the admissibility of his purported expert opinions. Resp. 15. These objections are not, as Plaintiffs suggest (at 9–10), an attempt to impose a quantitative-study requirement. They go to the heart of admissibility under Rule 702 and *Daubert*.

As the Eleventh Circuit has long held, even "a 'supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method.'" *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (quoting *Clark v. Takata Corp.,* 192 F.3d 750, 759 n.5 (7th Cir. 1999)); *see also Frazier,* 387 F.3d at 1261.  Yet that is precisely what Dr. Green seeks to do. A single chat with one person in a

MARTA station hardly qualifies as a scientific basis for his opinions, and that is reason enough to exclude Dr. Green's opinion relying on that chat.

## II.   Dr. Green's Opinions Are Not Based on a Recognized Scientific Methodology, Are Unreliable, and Are Unhelpful to the Trier of Fact.

Contrary to Plaintiffs' argument (at 8), State Defendants do not criticize Dr. Green for failing to apply "*quantitative* research standards [to] Dr. Green's qualitative analysis." Rather, State Defendants criticize his failure to apply *any* reliable scientific analysis when formulating his three challenged opinions. Such an objection is not simply a matter of weight to be given to those opinions, as Plaintiffs suggest (at 13–14), but directly concerns their unreliability and inadmissibility:  As this Court has explained, "[i]n all events, the expert must have factual and analytical support for his opinions." *Frye v. Daimler Trucks N. Am., LLC*, No. 1:18-cv-04827-JPB, 2021 WL 4241658, at *6 (N.D. Ga. Mar. 11, 2021).  Moreover, as the Eleventh Circuit has held, "'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert,' and the 'court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *MidAmerica C2L Inc. v. Siemens Energy, Inc.*, 25 F.4th 1312, 1327 (11th Cir. 2022) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The helpfulness prong is not "essentially a question of relevance," as Plaintiffs suggest (at 14), but goes to "'whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.'" *Cartwright v. Home Depot U.S.A., Inc.,* 936 F. Supp. 900, 901–02 (M.D. Fla. 1996) (quoting *Joiner v. General Elec. Co.,* 78 F.3d 524, 529–30 (11th Cir. 1996), *rev'd,* 522 U.S. 136 (1997) (quoting *Daubert,* 509 U.S. at 592)). Plaintiffs fail to provide any justification for how Dr. Green's three opinions, despite his years of experience, would assist the Court in understanding or deciding the issues before it.

## A.  Disclaimer Provision

As to the disclaimer provision, Dr. Green made clear that his opinion is based on his experience and "focused primarily on a direct reading of the disclaimer and how I expect voters to respond to it." Am. Rebuttal Rep. at 4; TR 243:24–244:19. However, as the Eleventh Circuit confirms—and Plaintiffs ignore—a purported expert's interpretation of ordinary, non-technical language is not a proper subject for expert testimony at all. *See United States v. Perry*, 14 F.4th 1253, 1265 (11th Cir. 2021) (finding that it was "plainly improper – where [a police officer] crossed the line from interpreting coded drug language to opining about plain language" because "the jury [must] interpret these plain-English phrases on its own"). Moreover, rather than

provide a review of academic literature, as Plaintiffs claim (at 15), Dr. Green offered no academic literature regarding the wording or placement of the required disclaimer language. He simply believed that some people would be put off by it, and as a result not complete and return the form. Am. Rebuttal Rep. 3–4. Such an "expectation," even from an expert, is by definition not based on a reliable scientific methodology and is not helpful to the trier of fact.

1.      Rather than rely on any "rigorous research design" or even a loosely constructed scientific inquiry, Dr. Green relies on the response of a single person who, in response to a leading question, stated that he would throw the ballot application "in the trash" because of the disclaimer. Rep. at 8 [Doc. 103-5]; Am. Rebuttal Rep. at 5. This is not, as Plaintiffs would have it (at 19), a situation where Dr. Green learns "of a typical Georgia voter's reaction to the disclaimer *when they in fact noticed it*." (emphasis in original). Rather, it was a suggestion that the person's prior response to the form—"I'd fill it out and send it in"—was wrong because he did not pay enough attention to the disclaimer language.[1] It is also not, as Plaintiffs argue (at 18), a demand that

---

[1] Plaintiffs also claim (at 17 n.4) that the disclaimer will "have an adverse effect on voters' responses to Plaintiffs' articulation of their message." They recognize (at 21) that the absentee-ballot application itself is not what is significant, but the "persuasive cover letter" that accompanies it. Dr. Green offers no opinion on what message Plaintiffs seek to express that would be

Dr. Green should have performed his own quantitative study. The problem is that Dr. Green offers no scientific basis establishing that his "methodology" is scientifically valid, let alone a sound methodology upon which he could draw conclusions. Instead, he admitted that "semi-structured interviews" of the sort on which he relied here are useful only as a means of obtaining useful *background* information, not as a means of generating scientifically sound conclusions. *See* Green Depo. 22:1–23:2, 23:13–17, 148:12–16; TR 224:13–24.

As Dr. Green recognized, moreover, "[a] weak design can be used to prove things that are patently false," Green Depo. 61:16–17, and "observational designs can produce misleading conclusions," *id.* 63:9–10. Yet Plaintiffs (at 15) want the Court to ignore all of that, and the legal standard for admissibility, and simply accept Dr. Green's opinion because he has "decades of experience studying public opinion and survey experiments, and specialized experience advising get-out-the-vote groups and ballot initiative proponents on the effects of language on voter behavior."

Plaintiffs also point to Dr. Green's opinion (at 15–16, 20–21) that, "when [the disclaimer] is displayed next to apparent state-mandated warnings about

---

diluted or negatively impacted by the absentee-ballot application, only that the form itself, separated from any "persuasive cover letter" might be viewed negatively. Such an acknowledgement undermines the entire reliability and helpfulness of Dr. Green's opinions.

voter fraud, [it] will decrease the effectiveness of Plaintiffs' communications based on voters' primed negative response to the disclaimer."  But Dr. Green offers no analysis of the fraud warning, and no academic literature addressing the positioning of the disclaimer on either form. Further, he never even asked his interview subjects to comment on the fraud language, let alone in context with the disclaimer.

Moreover, the lack of any reliable methodology to support his conclusion on this point has nothing to do with the fact, as Plaintiffs suggest (at 20), that Dr. Green did not use the actual State-created form in his interviews. It is his lack of any reliable scientific methodology that mandates exclusion of this opinion.

2.     For similar reasons, Dr. Green's opinion on the effects of the Disclaimer Provision would not be helpful to the finder of fact. While recognizing that, to help the trier of fact, "the expert's opinions [must be] 'beyond the understanding of the average lay person'" (at 14), Plaintiffs fail to establish that Dr. Green's "opinion" does anything more than restate the views of one lay person that his contractor interviewed in a MARTA station. His opinion on this point should be excluded on that basis as well.

**B.    Prefilling Prohibition**

As to the Prefilling Prohibition, as Plaintiffs acknowledge (at 21), Dr. Green opined that a prefilled form might be the "nudge" to get certain voters "over the behavioral threshold" of voting. However, as the State Defendants explained (at 18–22), this opinion is also not based on a reliable methodology, is not helpful to the trier of fact, and should likewise be excluded.

1.    Plaintiffs claim (at 22) that Dr. Green's opinion on this "nudging" point is reliable because other groups use prefilled forms as a matter of course. As noted, Dr. Green supports his assurance by relying on other groups' use of prefilled forms (at 22), but he also acknowledges that groups are often wrong about what is effective. Green Depo. 59:17–60:15. This is effectively an admission that his "because-others-are-doing-it" analysis is *not* based on a scientifically reliable theory or methodology.

And, while Plaintiffs also claim (at 22) that Dr. Green reached this conclusion based on some unidentified "randomized trials that are in the public domain," this Court has already rejected that approach: "An expert's unexplained assurance that he or she has relied on accepted principles fails [to satisfy the admissibility standard] as well." *Cooper v. Marten Transp., Ltd.*, No. 1:10-CV-03044-JOF, 2012 WL 12835704, at *2 (N.D. Ga. June 4, 2012), *aff'd in part on relevant grounds, rev'd in part on other grounds,* 539 F. App'x

963 (11th Cir. 2013) (per curiam).  Further, the effectiveness of any form, as Plaintiffs acknowledge (at 21–22), is entirely dependent on the "persuasive cover letter" that accompanies the absentee ballot application—a critical factor entirely absent from Dr. Green's opinion on this statutory feature.

Plaintiffs further claim (at 23) that the Hassell study supports Dr. Green's "nine-to-one confidence in [his] conclusion" regarding the benefits of prefilled applications.[2]  However, the Hassell study showed an *insignificant* increase in absentee-ballot participation from a prefilled application.[3] Plaintiffs are dismissive of that finding and instead suggest (at 23) that truth-seeking in the courtroom is somehow less exacting than in a laboratory. Plaintiffs then ignore the State's explanation (at 19–20, 22) of why this

---

[2] While noting "the Mann and Mayhew study of mailing applications" (at 22), Plaintiffs say nothing more about it, ignoring that the study did not evaluate prefilled forms, disclaimer language, or any relevant provision of SB 202 at issue before the Court.

[3] According to the study, the prefilled absentee-ballot application resulted in ten more people out of 1,900 (49 versus 39) completing the prefilled form than the blank form. Brief at 19–20 & n.5.  That means that, to reach the equivalent "outcome" here, it would take approximately 2,381 unfilled ballot applications to equal the results from the 1,906 prefilled ballot applications. As Dr. Green noted, this difference is only relevant from a *cost* perspective of how much it costs to produce votes. *Id.* at 20. Yet he does not do that analysis to demonstrate any actual harm (*i.e.*, lower turnout) to Plaintiffs from the Prefilling Prohibition, something Plaintiffs also ignore.

insignificant finding in a single partisan study does not provide a scientifically reliable basis for Dr. Green's expressed opinions on the Prefilling Prohibition.

Further, the Hassell study supports what Dr. Green himself notes is critical—that is, that the message accompanying the ballot application form must be well written and persuasive. Green Depo. 95:5–8, 105:19–106:17. Yet Plaintiffs offer no evidence that Dr. Green evaluated *their* message, either alone or in context with a blank or prefilled ballot application form. That failure makes implausible Plaintiffs' claim (at 23), that he had a "nine-to-one confidence [rating] in [his] conclusion" that prefilled ballot applications were superior to blank applications.

2.      Dr. Green's confidence that prefilled absentee-ballot applications are always more effective than blank applications (at 23) is also not helpful to the trier of fact in understanding a technical or scientific analysis of the Prefilling Prohibition. Besides resting on a patently unreliable methodology, Dr. Green's opinion is entirely derivative of actions by other groups—information that, if it is admissible at all, can easily be presented and argued by Plaintiffs' lawyers, without expert testimony. *See, e.g., Frazier,* 387 F.3d at 1262–63. There is nothing about Dr. Green's testimony on this point that would assist a trier of fact in understanding those actions. Accordingly, his "because-others-are-doing-it" analysis is not helpful to the trier of fact, either. *See id.*

### C.     Anti-Duplication Provision

Plaintiffs do not even suggest Dr. Green relied on any scientific analysis for his opinion on the Anti-Duplication Provision. And they once again fail to establish that this opinion would be helpful to the trier of fact.

1.     Rather than pointing to a scientifically reliable methodology as the basis for Dr. Green's opinion on this provision, Plaintiffs rely exclusively (at 24–25) on his "decades of experience studying civic organizations engaged in get-out-the-vote efforts, applying the principle of transaction costs to voter mobilization, and the academic literature concerning absentee mailer programs." Yet Dr. Green does not rely on any "academic literature" to support his conclusions. And he provides no "transaction costs" *analysis* of any actual facts regarding the Anti-Duplication Provision. Instead, he simply assumes that Plaintiffs and other entities are incapable of comparing their mailing lists to the list provided by the State of who has requested, received, or cast an absentee ballot during the five-day safe harbor period. And solely on that basis he claims that they are thus rolling the dice on whether they will be subject to penalties for violating the Anti-Duplication Provision. TR 239:7–240:24; 280:23–25 ("I think ...," "I don't know ...," "I'm guessing ..."). As a result, he *assumes* that some groups, including church groups, will simply not participate in this form of get-out-the-vote activity. Rep. at 10–11; Am. Rebuttal Rep. at 2,

14

15–16; TR 239:7–240:24, 241:24–25. That is obviously not enough for scientific reliability.

Indeed, Dr. Green does not even provide anecdotal evidence of a single person or organization that limited, or chose to not send, absentee-ballot applications because of the Anti-Duplication Provision or similar provisions anywhere in the country. TR 280:23–25. To accept such testimony thus requires a huge leap of faith that would undermine Rule 702, and Dr. Green's opinion on this point should be excluded. *MidAmerica C2L*, 25 F.4th at 1327.

2.     While Plaintiffs criticize the State Defendants' "rhetoric" regarding the lack of helpfulness of Dr. Green's opinion on this point (at 24–25), they offer no substance or analysis to support his opinions beyond their claim that "he's really experienced."   But those opinions are more akin to closing arguments than to expert analysis, and they should be excluded for lack of helpfulness as well. *Frazier*, 387 F.3d at 1262–63.

## CONCLUSION

For all these reasons, and those in the State Defendants' Motion, Dr. Green's opinions on the effects of the three SB 202 provisions discussed above are not based on a sound scientific methodology, are unreliable, and provide no assistance to the trier of fact in understanding the issues in this case. Accordingly, Plaintiffs should be precluded from offering any of these opinions.

Respectfully submitted this 31st day of January, 2023.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Charlene McGowan
Assistant Attorney General
Georgia Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Special Assistant Attorney General
Erik Jaffe*
H. Christopher Bartolomucci*
Brian J. Field*
Edward H. Trent*
Joshua J. Prince*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Fax: (202) 776-0136
gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com

16

Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Reply Brief in Support of Defendants' Motion to Exclude Expert Opinions of Donald P. Green, PhD has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(C).

*/s/ Gene C. Schaerr*
Gene C. Schaerr