# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| VOTEAMERICA, *et al.*,<br><br>　　　　*Plaintiffs*,<br><br>　　v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*,<br><br>　　　　*Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>　　　　*Intervenor-Defendants*. | Civil Action No.:<br>1:21-CV-1390-JPB |

# STATE DEFENDANTS' REPLY
# IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 2

I.   The Prefilling Prohibition and the Anti-Duplication Provision Regulate Conduct, not Speech. ............................................. 2

II.  The Prefilling Prohibition and the Anti-Duplication Provision Survive Both First Amendment and *Anderson-Burdick* Scrutiny. ...... 9

III. The Disclaimer Provision Does Not Unconstitutionally Burden or Compel Plaintiffs' Speech. ................................................. 14

IV.  The Challenged Provisions do not Implicate Plaintiffs' Freedom of Association. ........................................................... 16

V.   The Challenged Provisions are not Overbroad. ................................... 19

CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Ams. for Prosperity Found. v. Becerra,*
   141 S. Ct. 2373 (2021) ................................................................ 16

*Barker v. Hazeltine,*
   3 F. Supp. 2d 1088 (D.S.D. 1998) ............................................ 4

*Brnovich v. Democratic Nat'l Comm.,*
   141 S. Ct. 2321(2021) ............................................................. 13

*Buckley v. American Constitutional Law Foundation, Inc.,*
   525 U.S. 182 (1999) ................................................................ 3

*Cal. Democratic Party v. Jones,*
   530 U.S. 567 (2000) ................................................................ 6

*Callahan v. A.E.V., Inc.,*
   182 F.3d 237 (3d Cir. 1999) .................................................. 12

*City of Dallas v. Stanglin,*
   490 U.S. 19 (1989) ................................................................ 17

*Clark v. Cmty. for Creative Non-Violence,*
   468 U.S. 288 (1984) ................................................................ 9

*Cordoba v. Dillard's, Inc.,*
   419 F.3d 1169 (11th Cir. 2005) .............................................. 8

*Gralike v. Cook,*
   191 F.3d 911 (8th Cir. 1999) .................................................. 4

*Healy v. James,*
   408 U.S. 169 (1972) .............................................................. 18

*Kraft Gen. Foods, Inc. v. BC-USA, Inc.,*
   840 F. Supp. 344 (E.D. Pa. 1993) ........................................ 11

*League of Women Voters v. Hargett,*
   400 F. Supp. 3d 706 (M.D. Tenn. 2019) ............................... 18

*McClendon v. Long,*
   22 F.4th 1330 (11th Cir. 2022) ............................................. 15

*Meyer v. Grant,*
   486 U.S. 414, 421 (1988) ........................................................ 3

*Morris Jewelers, Inc. v. Gen. Elec. Credit Corp.*,
  714 F.2d 32 (5th Cir. 1983) ........................................................... 12

*NAACP v. Button*,
  371 U.S. 415 (1963) ...................................................................... 18

*National Institute of Family & Life Advocates v. Becerra*,
  138 S. Ct. 2361 (2018) .................................................................. 15

*NetChoice, LLC v. Attorney General*,
  34 F.4th 1196 (11th Cir. 2022) ...................................................... 4

*New Ga. Project v. Raffensperger*,
  976 F.3d 1278 (11th Cir. 2020) ..................................................... 13

*New York v. Ferber*,
  458 U.S. 747 (1982) ...................................................................... 20

*Riley v. National Federation of the Blind of N.C., Inc.*,
  487 U.S. 781 (1988) ........................................................................ 6

*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ...................................................................... 17

*Rumsfeld v. FAIR*,
  547 U.S. 47 (2006) ..................................................................... 6, 8

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ........................................................................ 4

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997) ........................................................................ 5

*U.S. West v. FCC*,
  182 F.3d 1224 (10th Cir. 1999) ...................................................... 5

*United States v. Rivera*,
  780 F.3d 1084 (11th Cir. 2015) .................................................... 11

*Village of Schaumburg v. Citizens for a Better Environment*,
  444 U.S. 620 (1980) ........................................................................ 6

*VoteAmerica v. Schwab*,
  576 F. Supp. 3d 862 (D. Kan. 2021) ............................................. 18

**Rules**

Fed. R. Evid. 803 ................................................................................ 11

# INTRODUCTION

In opposing the State Defendants' motion for summary judgment, Plaintiffs again ignore that this Court has already rejected nearly every argument they advance. True, a decision on a preliminary-injunction motion is not necessarily binding on the Court when the record has developed to show that a different result is appropriate. The complication for Plaintiffs, however, is their inability to identify *any* new evidence that requires a different result. Thus, there is still no evidence that two of the provisions Plaintiffs challenge—the Prefiling Prohibition and the Anti-Duplication Provision—affect Plaintiffs' speech. Rather, Plaintiffs remain free to communicate their pro-absentee voting message to as many Georgia voters as they wish. And, because of the State's well-demonstrated interests in minimizing voter confusion and ensuring efficient elections, these provisions satisfy any level of scrutiny.

Similarly, Plaintiffs have identified no evidence raising a genuine dispute about the fact that the Disclaimer Provision simply requires Plaintiffs to include an accurate disclaimer on any absentee-ballot application they send. And the record lacks any evidence to dispute that this provision supports the State's interests in minimizing voter confusion and ensuring efficient elections.

Plaintiffs' remaining claims are equally doomed. It remains undisputed that Plaintiffs send their mailings to strangers, which dooms their freedom-of-

association claims. Their reliance on far-fetched hypotheticals is similarly fatal to their overbreadth challenge. And Plaintiffs have conceded that summary judgment is appropriate on their vagueness claim. Pls.' Opp'n at 39 n.19 [Doc. 159].

Accordingly, the Court should enter summary judgment for the State Defendants on all of Plaintiffs' claims.

## ARGUMENT

Each challenged provision survives any level of scrutiny. The Prefilling Prohibition and the Anti-Duplication Provision regulate conduct, not speech, and satisfy both rational-basis and *Anderson-Burdick* review. Also, while the Disclaimer Provision affects Plaintiffs' speech, it survives both *Anderson-Burdick* review and exacting scrutiny. The challenged provisions also do not unconstitutionally limit Plaintiffs' freedom of association, as the record shows they send their absentee-ballot applications only to strangers. Finally, Plaintiffs' overbreadth claims fail because the challenged provisions largely leave Plaintiffs' speech untouched, and Plaintiffs rely on pure speculation about potential overbroad applications.

## I. The Prefilling Prohibition and the Anti-Duplication Provision Regulate Conduct, not Speech.

Plaintiffs begin by insisting that the Prefilling Prohibition and the Anti-

Duplication Provision burden "protected speech" and "expressive conduct." [Doc. 159 at 4].  But this Court has already rejected that argument, finding that neither provision "implicate[s] Plaintiffs' First Amendment rights."  Order at 38, 44–45 [Doc. 131].  The same is true today: Sending or prefilling an absentee-ballot application is not core political speech, is not intertwined with Plaintiffs' cover letter, and is not expressive.

　　1.　In a renewed attempt to disguise conduct as speech, Plaintiffs again turn to the Supreme Court's decisions in *Meyer v. Grant*, 486 U.S. 414, 421 (1988), and *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 191–92 (1999), noting that the Supreme Court held that courts must allow the "unfettered interchange of ideas" and guard against "hindrances to political conversations." [Doc. 159 at 5].  While true, those statements are irrelevant, as the record shows that it is Plaintiffs' *cover letters* that communicate their pro-absentee voting message, not the applications themselves.[1]  And, as this Court already held ([ECF No. 131] at 17–21), Plaintiffs may continue disseminating their ideas through the documents that contain their message—the cover

---

[1] Citing *Meyer,* 486 U.S. at 423–24, for example, Plaintiffs claim (at 23–24) that SB 202 limits their ability to advocate their cause in the way they consider most effective and diminishes the "total quantum of speech."  These arguments fail for the same reasons listed above—sending pre-filled absentee-ballot applications is conduct, not speech.

letters.  Sending the applications, however, is not part of that speech.[2]

Plaintiffs are equally misguided when they again say that sending an absentee-ballot application is protected because it is "[c]onveying information and personalizing [an] application[]."  [Doc. 159 at 6].  But Plaintiffs' authority doesn't remotely support that proposition:  *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), addressed a law that prohibited the sale of pharmacy records *if* those records would be used for marketing purposes.  *Id.* at 557.  And on that basis the Supreme Court held that the statute unlawfully targeted "speech with a particular content."  *Id.* at 564.  Moreover, *NetChoice, LLC v. Attorney General* addressed the right of internet companies to decide the information allowed on their websites.  34 F.4th 1196, 1203 (11th Cir. 2022) (subsequent history omitted).  Unsurprisingly, Plaintiffs offer no explanation for why these cases with substantially different facts have any bearing on this case.[3]

---

[2] Plaintiffs also suggest (at 11) that collecting and delivering completed voting materials is different from persuasion and distribution.  But, as this Court has recognized, the challenged provisions regulate only *distribution*, which "do[es] not embody core political speech."  [Doc. 131 at 20].  Plaintiffs can "engage in [persuasion] as often as—and in whatever form—that they desire." *Id.*

[3] Plaintiffs' reliance (at 6 n.2) on other out-of-circuit authority is equally misguided.  Plaintiffs cite *Barker v. Hazeltine*, 3 F. Supp. 2d 1088 (D.S.D. 1998), and *Gralike v. Cook*, 191 F.3d 911 (8th Cir. 1999), *aff'd* 531 U.S. 510 (2001), to suggest that ballots can have speech elements.  But neither case says as much.  Instead, they involved laws that forced candidates to endorse term

At the same time, Plaintiffs attempt to ignore the *relevant* Supreme Court authority. Although Plaintiffs relegate their response to a footnote (at 6 n.2), they cannot avoid the Supreme Court's decision in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), holding that groups lack the "right to use the ballot itself to send a particularized message" or as a "forum[] for political expression." *Id.* at 363. Just as ballots elect candidates, absentee-ballot applications apply for absentee ballots. Thus, Plaintiffs cannot avoid *Timmons'* holding, which confirms that Plaintiffs' activity is not core political speech.

2. Nor is there any merit in Plaintiffs' attempt to convert non-expressive conduct—sending applications—into expressive conduct by merely mentioning the applications in the cover letter. [Doc. 159 at 14]. It is difficult to conceive of a clearer example of what the Supreme Court in *Rumsfeld v. FAIR* meant when it held that a regulated party could not turn conduct "into 'speech' simply

limits on pain of being identified on ballots as being against them. *Barker*, 3 F. Supp. 2d at 1092; *Gralike*, 191 F.3d at 915. The issue in these cases was the sanction for failing to adopt a state-mandated viewpoint. None of the content- and viewpoint-neutral provisions Plaintiffs challenge here is remotely comparable to the compelled viewpoints in *Gralike* and *Barker*. For the same reasons, *U.S. West v. FCC*, 182 F.3d 1224 (10th Cir. 1999), does not help Plaintiffs. There, the Tenth Circuit invalidated a rule prohibiting the use of customer data without the customer's permission in all but a narrow subset of cases. Here, the opposite is true—Plaintiffs can use voter information however they want, including to "target" voters, with only limited exceptions: they cannot prefill absentee-ballot applications or send duplicate applications.

by talking about it." 547 U.S. 47, 66 (2006).[4]

Plaintiffs also err (at 15–16) in invoking the principle that the First Amendment does not allow the government to restrict "some First Amendment activity simply because it leaves other … activity unimpaired." (citing *Cal. Democratic Party v. Jones*, 530 U.S. 567, 581 (2000)). That proposition has no bearing here, as the Prefilling Prohibition and the Anti-Duplication Provision do not restrict *any* First Amendment activity.

Nor do Plaintiffs gain anything by citing (at 13) the Supreme Court's decision in *Riley v. National Federation of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988), which addressed the "component parts of a single speech." As this Court explained already, the cover letter and the absentee-ballot applications "can exist and be sent without the other." [Doc. 131 at 21]. Thus, reliance on *Riley*'s "single speech" language adds nothing.[5]

Like the relevant authority, the facts also cut against Plaintiffs as

---

[4] Contrary to Plaintiffs' argument (at 15), the fact that Intervenors also discussed their conduct in their mailers or that they addressed an absentee-ballot application in their expressive letters is irrelevant. For Intervenors, as for Plaintiffs, sending an unsolicited pre-filled application, an unsolicited application without a disclaimer, and sending an unsolicited application to a voter that has already requested a ballot are now violations of Georgia law.

[5] For this same reason, namely that the letter and application are severable, this Court (at 20–21) has already rejected Plaintiffs' reliance on *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980).

nothing in the record suggests that the cover letters and applications are intertwined. Rather, Plaintiffs point to a few documents that explain their goal of "convinc[ing] a selected voter that engaging in the electoral process through absentee voting is trustworthy and easy, using a calculated message and personalized resources." [Doc. 159 at 14]. But whatever Plaintiffs' *goal*, the applications are easily separable from the cover letters that accompany them. [Doc. 131 at 21]. And Plaintiffs offer no good reason why the Court was wrong to reject these arguments previously.

3. Finally, even apart from the cover letters, Plaintiffs suggest (at 9–13) that the applications themselves convey a message about the importance of absentee voting. Plaintiffs already advanced this argument, and the Court correctly rejected it.[6] [Doc. 131 at 25–26].

Plaintiffs now point (at 9) to over 663,500 Georgians' having submitted one of Plaintiffs' applications in 2020, suggesting that this shows that voters *must* have understood a message from Plaintiffs' sending applications. But Plaintiffs overlook a flaw in this argument—each of these voters received an application *and* Plaintiffs' personalized cover letter. And, as discussed, that

_____

[6] Plaintiffs handpick (at 9) a few statements from SB 202's sponsor suggesting that sending an absentee ballot application is First Amendment activity, but this Court has already rightly rejected that argument. [Doc. 131 at 38, 44–45].

letter discussed the importance and ease of applying to vote absentee and urged the recipients of their mailers to do so. It is nothing but rank speculation to suggest that voters understood that message from the absentee-ballot application alone. And, of course, speculation will not do. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quotation marks omitted).

Thus, Plaintiffs fail to show that a voter receiving an absentee-ballot application alone would understand that mailing to be any kind of message, whether "a pro-absentee voting message" or otherwise. [Doc. 131 at 25]. As this Court found previously, the message that Plaintiffs intend to send "is not necessarily intrinsic to the act of sending prospective voters an application form." *Id.* Now, as before, Plaintiffs' need to include "explanatory speech" to send some sort of message remains "strong evidence" that the mailing of an absentee-ballot application is not "so inherently expressive" as to qualify for First Amendment protection. *Id.* at 23 (quoting *Rumsfeld*, 547 U.S. at 66).

4. For each of these reasons, Plaintiffs once again fail to meet their "obligation," as the Supreme Court requires, to "demonstrate that the First Amendment even applies" to their pre-filled absentee-ballot applications or their duplicate mailings. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S.

288, 293 n.5 (1984).  Rather, as this Court correctly recognized, "the Prefilling and Anti-Duplication Provisions do not implicate Plaintiffs' First Amendment rights." [Doc. 131 at 38].  They merely regulate Plaintiffs' conduct.

## II.  The Prefilling Prohibition and the Anti-Duplication Provision Survive Both First Amendment and *Anderson-Burdick* Scrutiny.

Because the Prefilling Prohibition and Anti-Duplication Provision regulate conduct, not speech, they are subject only to rational basis review, which, as Plaintiffs implicitly recognize, they easily survive.  State Defs.' Mem. of Law in Supp. of Mot. Summ. J. at 14–15 [Doc. 149-1].  Plaintiffs nonetheless insist that these provisions are subject to strict scrutiny.[7]  But whatever standard this Court applies, be it rational-basis review, the *Anderson-Burdick* framework it applied previously, or strict scrutiny, the provisions survive.

1. As Plaintiffs concede, *Anderson-Burdick* scrutiny applies to laws that burden a constitutional right. *Compare* [Doc. 149-1 at 15 n.5] *with* [Doc. 159 at 28].  But Plaintiffs fail to mount much of any argument as to why the Prefilling Prohibition and the Anti-Duplication Provision fail *Anderson-Burdick* scrutiny.  Rather, as the Court already held, Plaintiffs have not shown that the "magnitude of the alleged injury" was "severe." [Doc. 131 at 38].

---

[7] Because the Prefilling and Anti-Duplication Provisions only regulate conduct, *see* [Doc. 131 at 26], they are not content- or viewpoint-based.

Even after discovery, moreover, the record lacks any evidence suggesting that the Prefilling Prohibition or the Anti-Duplication Provision are unreasonable ways to achieve the State's goals. Rather, all evidence points the other way. Plaintiffs do not dispute that SB 202 allows them to send voters who have not yet requested a ballot an absentee-ballot application—an option they used at least once in 2022. Lopach Depo. 162:4–19 [Doc. 162]. Nor is there any dispute that Plaintiffs may communicate to Georgia voters as often as they wish through letters and other forms of communication. PI Hr'g Tr. 45:19–46:8 [Doc. 149-9] ("Day 2 Tr."). That the challenged provisions regulate Plaintiffs' conduct while leaving their avenues for speech open is reason enough for this Court to conclude, once again, that the burdens imposed by the Prefilling Prohibition and the Anti-Duplication Provision are not severe, and therefore satisfy *Anderson-Burdick* review.

2. Rather, Plaintiffs devote their argument (at 30–39) to again asking this Court to apply strict scrutiny. But even if that were appropriate, which it is not, the Prefilling Prohibition and the Anti-Duplication Provision survive.

In their opposition, Plaintiffs attempt to downplay the significance of the State's compelling interest in reducing voter confusion, suggesting (at 32) that the State only received a small number of "tips referenc[ing] purportedly incorrect voter information" and "tips … from former Georgia voters who report

receiving applications despite having moved out of state."  But other than criticizing the number of reports received, Plaintiffs do not engage the fact that voters reported their complaints to the State.  Rather, Plaintiffs attempt to sidestep this evidence by asking the Court to ignore the reports as hearsay. The law is not on Plaintiffs' side, as the Eleventh Circuit confirms: "[A]n out-of-court statement admitted to show its effect on the hearer is not hearsay," and, at the very least, these voter complaints are admissible for that reason. *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015).[8]

That is precisely why the State identified the many voter complaints— they show that individuals expressed confusion to the State, which caused the State to respond.  *Kraft Gen. Foods, Inc. v. BC-USA, Inc.*, 840 F. Supp. 344, 347–48 (E.D. Pa. 1993) (admitting evidence of confusion under Rule 803(3)). Indeed, Plaintiffs do not dispute that State election officials were forced to take these calls and respond to these emails, which required a significant amount of time.  Moreover, Plaintiffs ignore the evidence showing that, in 2020, voters cancelled 40,694 absentee-ballot applications that had been submitted.

---

[8] This Court can also consider voter concerns about potential fraud or confusion about whether they were receiving duplicate ballots, *see* Germany Decl. ¶ 42 [Doc. No. 113-2]; Day 2 Tr. 20:3–5, under the exceptions for hearsay for then-existing mental states under Rule 803(3).

[Doc. 149-1 at 6]. This further demonstrates that voters were confused about what they were submitting when they submitted absentee-ballot applications. Ultimately, whether any particular voter's prefilled application was incorrect or duplicative—or whether the voters were *actually* confused—is irrelevant. *See Morris Jewelers, Inc. v. Gen. Elec. Credit Corp.*, 714 F.2d 32, 33–34 (5th Cir. 1983); *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 252 & n.11 (3d Cir. 1999). What matters is that election officials had to field "so many calls," Mashburn Depo. 83:16–84:14 [Doc. 165], and respond to so many written complaints.

In any event, the dispute about the accuracy or admissibility of voter statements is misguided, as even Plaintiffs' witness conceded that they had previously sent absentee-ballot applications with incorrectly pre-filled information, Lopach Depo. 129:14–21, and that recipients complained and asked to no longer receive such mailings. PI Hr'g Tr. 84:13–24 [Doc. 149-6] ("Day 1 Tr."); Lopach Depo. 102:19–103:12, 153:15–154:5 [Doc. 162].[9] Thus, it is undisputed that organizations like Plaintiffs sent incorrect applications to

---

[9] Further, Plaintiffs' own exhibits submitted in opposition to summary judgment sufficiently establish that voters have complained about pre-filling errors and duplicate applications. *See* Pls.' Ex. 17.

Georgia voters and that those voters complained.[10]

Plaintiffs are wrong to assert (at 36–38) that the Prefilling Prohibition and the Anti-Duplication Provision are not narrowly tailored. Plaintiffs assert, for example, that the Prefilling Prohibition fails narrow tailoring just because any incorrect information on a prefilled absentee-ballot application comes from the voter file, which they admit (at 37–38) will "lead to occasional incorrect addresses." But that does not speak to tailoring at all. Whatever the source of the incorrect information, the State opted to prohibit the actions most closely related to the complaints received—incorrectly prefilled applications.

Plaintiffs are also wrong in alleging (at 36–37) that the Anti-Duplication Provision is not narrowly tailored because it still allows them to send duplicate mailings to voters that have not already applied. But this just confirms that the State targeted a narrow set of conduct, thereby ensuring that the provision is narrowly tailored. While the State could have prohibited all such mailings,

_____

[10] Plaintiffs also err in arguing (at 33) that the State did not have any compelling interest in these provisions because they did not target fraud. But Plaintiffs ignore that the State was responding to voter concerns that Plaintiffs' practices could permit voter fraud. *See, e.g.*, Mashburn Depo. 85:10–18 [Doc. 165]. And, because of its effect on voter confidence, acting to prevent the perception of fraud is a compelling purpose. *See, e.g., Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2340 (2021); *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020).

it instead targeted only the conduct that led to complaints.

Finally, Plaintiffs argue (at 38–39) that these provisions fail strict scrutiny because it would be less restrictive for the State simply to explain the matter to the public through a press release. Unsurprisingly, there is no evidence in the record to suggest that a simple press release would adequately respond to voter concerns or would even reach every voter confused by mailers from third parties and concerned about the possibility of fraud.

Accordingly, whatever standard the Court applies, the Prefilling Prohibition and Anti-Duplication Provision survive, because they were enacted to serve important government interests in promoting efficient elections and voter confidence, while also being tailored to further those interests.

## III. The Disclaimer Provision Does Not Unconstitutionally Burden or Compel Plaintiffs' Speech.

As with the Prefilling Prohibition and the Anti-Duplication Provision, Plaintiffs identify no evidence showing that the Disclaimer Provision is unconstitutional. In fact, Plaintiffs admit that they "do not challenge the portion of the Disclaimer that requires [them] to disclose themselves (and not the government) as the sender." [Doc. 159 at 20]. Instead, they only challenge the part of the disclaimer that requires them to say that the absentee-ballot application they include with their mailer is not a government publication—a

statement that their own expert confirmed is "true." Day 1 Tr. 215:23–216:16.

Once again, Plaintiffs mostly rely (at 5–6, 19–22) on *McClendon v. Long*, 22 F.4th 1330 (11th Cir. 2022), and *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*"), to support their challenge to the Disclaimer Provision.  But neither helps Plaintiffs.  Indeed, this Court already rejected Plaintiffs' claim (at 21) that the Disclaimer Provision forces Plaintiffs to convey the government's message. As the Court explained, "pretermitting Plaintiffs' contention that the first statement of the Disclaimer is factually incorrect, the Disclaimer says nothing (whether complementary or contradictory) regarding the pro-absentee voting message Plaintiffs wish to convey." [Doc. 131 at 32].  For that reason, "the manner of speech compelled … is quite different from the manner of speech compelled in cases like *McClendon* … and *NIFLA*" where "the plaintiffs were required to convey the government's own message." *Id.* Although Plaintiffs maintain that these cases compel a different result, they identify no evidence to support a different conclusion.  Accordingly, whether the Court applies *Anderson-Burdick* review or strict scrutiny, the Disclaimer Provision survives.

As with the other provisions, Plaintiffs do not engage the record.  Rather, they again ask the Court (at 32) to *ignore* the record, erroneously arguing that voter complaints are inadmissible hearsay.  Once more, because this Court can

consider the voter complaints both for their effect on election officials or for their truth under well-established exceptions to the rule against hearsay, nothing is left of Plaintiffs' attempt to challenge the Disclaimer Provision.

Indeed, this Court has already found a "substantial relation" between the "language of the Disclaimer and the state's interests in reducing voter confusion and ensuring the effective and efficient administration of its elections" and a sufficiently tailored, "reasonable" fit. [Doc. 131 at 46–47]. That is all that is required in cases involving "compelled disclosure requirements." *Ams. for Prosperity Found. v. Becerra*, 141 S. Ct. 2373, 2383, 2385 (2021). Accordingly, the Court should also enter summary judgment for the State on Plaintiffs' challenge to the Disclaimer Provision.

## IV. The Challenged Provisions do not Implicate Plaintiffs' Freedom of Association.

Plaintiffs' freedom-of-association claims fare no better. Once again, Plaintiffs ignore this Court's prior conclusion that the challenged provisions do not "restrict their associational rights" because "Plaintiffs send application forms to strangers whose information they obtain from the state's voter roll." [Doc. 131 at 28]. Nothing has changed since then.

Through discovery, Plaintiffs did not marshal any evidence showing that they sent applications to anyone other than strangers whose information they

obtained from a third-party vendor.  Lopach Depo. 90:18–20, 118:9–119:4 [Doc.

162].  Rather, Plaintiffs largely argue that their freedom-of-association claims

survive even when they try to associate with strangers.

But that flouts governing law.  As the Supreme Court has explained, the

First Amendment association doctrine protects only "join[ing] in a common

endeavor" or engaging in "collective effort on behalf of shared goals."  *Roberts

v. U.S. Jaycees*, 468 U.S. 609, 618, 622 (1984).  But sending unsolicited

applications to strangers lacks any such "common" or "collective" work.  That

is likely why nearly everyone to whom Plaintiffs send their applications either

ignores them or asks Plaintiffs to stop sending them. Pls.' Ex. 21 [Doc.159-21]

(showing a vanishingly low response rate); Pls.' Ex. 17 at 20–21, 26 [Doc. 159-

17] ("Stop sending these bloody letters"; "Stop this immediately"; "NEVER

MAIL ME AGAIN OR ELSE!"; "JUST STOP!!"; "ENOUGH ALREADY!!").

Plaintiffs similarly have no answer to this Court's prior conclusion that

the "circumstances here are more akin to those in" *City of Dallas v. Stanglin*,

490 U.S. 19, 24–25 (1989).  [Doc. 131 at 28].  There, the Court "declined to find

associational rights for strangers who merely patronized a dance club and were

not engaged in any type of joint advocacy."  [Doc. 131 at 28].  The record here

demonstrates even *less* associational activity than in *Stanglin*.  Rather than

"patron[izing] … the same business establishment," *Stanglin*, 490 U.S. at 24,

this case involves Georgians receiving unsolicited applications from Plaintiffs without taking *any* steps to associate together or with Plaintiffs.[11]

Ignoring that precedent, Plaintiffs focus (at 27) on two out-of-circuit district court cases—*VoteAmerica v. Schwab*, 576 F. Supp. 3d 862 (D. Kan. 2021), and *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706 (M.D. Tenn. 2019)—that they believe compel a different result. Neither is persuasive. In *VoteAmerica*, the state defendants did "not dispute that the restrictions"— which included a *complete ban* on non-residents mailing absentee-ballot applications to Kansas voters—"hinder[ed] plaintiffs' right to associate." 576 F. Supp. 3d at 869, 875. Here, there is no such prohibition. And, in *League of Women Voters*, the plaintiffs challenged provisions of Tennessee law that required them to register and receive training before they could engage in voter registration activities. 400 F. Supp. 3d at 710. Neither *VoteAmerica* nor *League of Women Voters* engaged with what the Supreme Court and this Court have recognized as dispositive—that the voters being reached were strangers

---

[11] Plaintiffs' passing reliance (at 18) on *NAACP v. Button*, 371 U.S. 415 (1963), is no different. There is no evidence that any recipient of Plaintiffs' unsolicited mailings seeks to "*begin* an association." Plaintiffs' reliance (at 18) on *Healy v. James*, 408 U.S. 169 (1972), is equally unavailing. That case involved a state college's decision to deny a student club formal recognition—effectively prohibiting the student club from organizing on campus at all. In contrast, Plaintiffs are not prohibited from associating with Georgia voters.

to the organization. [Doc. 131 at 28]. Thus, just as before, Plaintiffs' associational rights are not implicated by any of the challenged provisions.

## V.   The Challenged Provisions are not Overbroad.

Plaintiffs' overbreadth claim deserves the same fate as the claims discussed above. As noted, Plaintiffs have no response to the Court's earlier conclusion that neither the Prefilling Prohibition nor the Anti-Duplication Provision regulates speech. [Doc. 131 at 25–26, 38]. For that same reason, Plaintiffs cannot meet the high bar of showing overbreadth.

In fact, Plaintiffs hardly even dispute that summary judgment should be entered for the State on their overbreadth claim. To begin, they concede that the Anti-Duplication Provision is not overbroad. *See* [Doc. 159 at 39] (arguing only that "[t]he Disclaimer and the Prefilling Prohibition are … overbroad"). But even when addressing the Disclaimer Provision and the Prefilling Prohibition, Plaintiffs fail to identify any evidence supporting their claim.

For the Disclaimer Provision, Plaintiffs argue (at 40) only that it must be overbroad because it would require a disclaimer on absentee-ballot applications sent to neighbors or family members. But Plaintiffs fail to offer *any* explanation for why this renders the provision overbroad. Rather, the State's interest in ensuring that recipients know the source of any unsolicited absentee-ballot application would apply equally to each circumstance Plaintiffs

identify.  Perhaps that is why Plaintiffs do not identify any authority for their argument that that the Disclaimer Provision is unconstitutionally overbroad.

Plaintiffs also argue in passing (at 40) that the Prefilling Prohibition is overbroad because it "applies even when the personalized information is accurate and drawn from the State's own voter file," or because some county election officials may "prefer prefilled applications."  But the record shows that, irrespective of the source, prefilled applications in Georgia have contained errors and caused confusion.  And the State responded with the Prefilling Provision, which promotes efficiency and voter confidence.  Considering that the Supreme Court has stated that the overbreadth doctrine should be applied "only as a last resort," *New York v. Ferber*, 458 U.S. 747, 769 (1982) (citation omitted), Plaintiffs have not come close to demonstrating that it applies here.

## CONCLUSION

In sum, there is no evidence that the challenged provisions violate the First Amendment.  Plaintiffs are free to communicate their pro-absentee-voting message to Georgia voters.  The challenged provisions merely regulate conduct that led to voter confusion and additional work for election administrators in a way that is narrowly tailored—if that were even required—to further several of the State's compelling interests. The Court should enter summary judgment for the State Defendants.

Respectfully submitted this 28th day of February, 2023.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
Elizabeth Vaughan
Assistant Attorney General
Georgia Bar No. 762715
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Special Assistant Attorney General
Erik Jaffe*
H. Christopher Bartolomucci*
Brian J. Field*
Edward H. Trent*
Joshua J. Prince*
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272

bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(C).

*/s/ Gene C. Schaerr*
Gene C. Schaerr