IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VOTEAMERICA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> *Intervenor-Defendants.* | Civil Action No.: 1:21-CV-1390-JPB |

**STATE DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING THE EXPRESSIVE CONDUCT STANDARD**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1
ARGUMENT .................................................................................................. 2
CONCLUSION .............................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Glen Theatre, Inc.*,
  501 U.S. 560 (1991) ................................................................................ 3

*Brown v. Louisiana*,
  383 U.S. 131 (1966) ................................................................................ 3

*Burns v. Town of Palm Beach*,
  999 F.3d 1317 (11th Cir. 2021) ........................................................ *passim*

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984) ................................................................................ 1

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
  6 F.4th 1247 (11th Cir. 2021) ................................................................. 6

*Feldman v. Ariz. Sec'y of State's Off.*,
  843 F.3d 366 (9th Cir. 2016) ................................................................... 7

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
  901 F.3d 1235 (11th Cir. 2018) ........................................................ *passim*

*Holloman ex rel. Holloman v. Harland*,
  370 F.3d 1252 (11th Cir. 2004) .............................................................. 2

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
  515 U.S. 557 (1995) ........................................................................ 3, 6, 8

*NetChoice, LLC v. Attorney General*,
  34 F.4th 1196 (11th Cir. 2022) ............................................................ 5, 6

*New Ga. Project v. Raffensperger*,
  484 F. Supp. 3d 1265 (N.D. Ga. 2020) ................................................... 8

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
  547 U.S. 47 (2006) .................................................................................. 8

*Spence v. Washington*,
  418 U.S. 405 (1974) ............................................................................... 2, 3

*Texas v. Johnson*,
  491 U.S. 397 (1989) ........................................................................ 1, 2, 3, 4

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503 (1969) ...................................................................................... 3

*Voting for Am., Inc. v. Steen*,
  732 F.3d 382 (5th Cir. 2013) ........................................................................ 8

## INTRODUCTION

As State Defendants demonstrated in their motion for summary judgment [Doc. 149], Plaintiffs do not engage in expressive conduct to which "the First Amendment even applies" when they mail absentee-ballot applications. [Doc. 149-1 at 10] (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984)). Rather, any expressive conduct is limited to the cover letters Plaintiffs send alongside those applications. *See id.* at 11. For that reason, the Supreme Court's *Johnson* standard confirms that Plaintiffs' mailing of an absentee-ballot application alone could not be "understood by those who viewed it" to "convey a particularized message." *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

In its recent summary-judgment decision, this Court nevertheless concluded, based on the present record, "that a genuine issue of fact exists as to whether the absentee ballot applications convey some sort of message." [Doc. 179 at 22]. In reaching this conclusion, the Court stated that the parties had not addressed several relevant factors that the Eleventh Circuit discussed in *Burns v. Town of Palm Beach*, 999 F.3d 1317 (11th Cir. 2021). [Doc. 179 at 21–22]. State Defendants thus provide this supplemental brief, which explains why the *Burns* factors also weigh against concluding that Plaintiffs engage in expressive conduct when they merely send absentee-ballot

applications, independent of any cover letters the Plaintiffs may simultaneously provide.

## ARGUMENT

The Supreme Court has long held that the First Amendment protects expressive conduct when it functionally operates as speech. *See Johnson*, 491 U.S. at 404. That occurs, the Eleventh Circuit explains, when: (1) the conduct shows "[a]n intent to convey a particularized message"; and (2) "the surrounding circumstances" show a "great" "likelihood … that the message would be understood by those who viewed it." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)). Thus, according to the Eleventh Circuit, the question is "whether the reasonable person would interpret" the conduct—here, sending prefilled and duplicate absentee-ballot applications—as communicating "*some* sort of message[.]" *Id.* As discussed below, a reasonable person would not interpret Plaintiffs' mere mailing of an absentee-ballot application—independent of the cover letter included in such a mailing—as communicating any message.

1. The Eleventh Circuit has identified several factors that courts may use to make such a determination. Although the Court correctly pointed to *Burns* as identifying these factors, the Eleventh Circuit in *Burns* was discussing that court's earlier decision in *Fort Lauderdale Food Not Bombs v.*

2

*City of Fort Lauderdale*, 901 F.3d 1235 (11th Cir. 2018), which sets forth the expressive conduct standard for this Circuit. According to the Eleventh Circuit, conduct remains no more than a meaningless "symbol" without some "context" that "may give meaning to the symbol." *Id.* at 1241 (quoting *Spence*, 418 U.S. at 410). Thus, in this Circuit, it is "the *circumstances* surrounding an event [that] often help set the dividing line between activity that is sufficiently expressive and similar activity that is not." *Id.* (emphasis added) (citing *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 568 (1995) (walking vis-à-vis parades); *Brown v. Louisiana*, 383 U.S. 131, 141–42 (1966) (sitting down vis-à-vis a sit-in); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–66 (1991) (nudity vis-à-vis "marginally" expressive nude dancing)).

In *Food Not Bombs* itself, the Eleventh Circuit identified five reasons that "the surrounding circumstances" in that case "would lead the reasonable observer to view the conduct as conveying some sort of message." 901 F.3d at 1242. Those five reasons were: (1) the plaintiff intended to distribute literature or hang banners in connection with its expressive activity, *id.* (citing *Hurley*, 515 U.S. at 570); (2) the activity was open to all, *id.*; (3) the activity took place in a traditional public forum, *id.* (citing *Spence*, 418 U.S. at 410; *Johnson*, 491 U.S. at 406); (4) the activity addressed an issue of public concern, *id.* at 1243 (citing *Spence*, 418 U.S. at 410; *Johnson*, 491 U.S. at 406; *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505 (1969)); and (5) the

3

activity had been understood to convey a message over the millennia, *id.* (citing *Johnson*, 491 U.S. at 405).

As noted, these are the same "contextual guidelines" that the Eleventh Circuit later discussed in *Burns*. 999 F.3d at 1346. But the Eleventh Circuit "d[id] not hold and ha[s] not said … that the[se] ... factors are 'exclusive,'" because "[t]here may be other factors that are relevant to whether" something "is expressive conduct protected by the First Amendment." *Id.* And the Eleventh Circuit does not require that "every contextual factor has to weigh in favor of the conduct being expressive." *Id.*

2. Applying these factors here, none of the factors in *Burns* or *Food Not Bombs* fits the context surrounding Plaintiffs' conduct. *First*, unlike a party who distributes literature or hangs banners, the absentee-ballot applications that Plaintiffs mail contain no messages, and they cannot contain Plaintiffs' messages because they are state-created forms. *See* [Doc. 149-5]. The entirety of Plaintiffs' own speech is contained in separate cover letters, which they can still send without restriction. *See id. Second* and *third*, Plaintiffs' mailings are targeted at specific areas and groups of people; they are neither open to all nor do they take place in a traditional public forum. Lopach Dep. at 86:11–13 [Doc. 162] (Voter Participation Center targets "people of color, unmarried women, and young people"); *id.* at 86:18–22 (Center for Voter Information targets those "wanting to see the New American Majority participate in

4

elections at their full strength"); *id.* at 87:18–88:18 (admitting that Plaintiffs do not target *all* people of color or unmarried women in Georgia). *Fourth*, Plaintiffs' views about voting might involve an issue of public concern, but those views appear exclusively in their cover letters, not in prefilled or duplicate absentee-ballot applications themselves. *See* [Doc. 149-5]. *Finally*, mailing prefilled or duplicate applications has never, in and of itself, been understood to convey a message, much less a millennia-spanning one. Accordingly, the context-focused factors that the Eleventh Circuit discussed in *both Burns* and *Food Not Bombs* confirm that Plaintiffs are not engaged in expressive conduct when they send absentee-ballot applications.

3. The same is true if the Court looks beyond the five factors that the Eleventh Circuit discussed in *Burns* and *Food Not Bombs*. Indeed, since *Burns*, the Eleventh Circuit's decisions analyzing whether conduct was expressive have omitted discussing *any* of these factors. *See, e.g.*, *NetChoice, LLC v. Attorney General*, 34 F.4th 1196 (11th Cir. 2022), *cert. granted in part sub nom. Moody v. NetChoice, LLC*, 144 S. Ct. 478 (2023) (mem.) *and denied sub nom. NetChoice, LLC v. Moody,* 144 S. Ct. 69 (2023) (mem.). Thus, the Court need not confine itself to the five factors that the Eleventh Circuit discussed in *Burns* and *Food Not Bombs*. Rather, in *NetChoice*, the Eleventh Circuit pointed to "our general standard for what constitutes inherently expressive conduct protected by the First Amendment" in *Coral Ridge*

5

*Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021), which "built on our earlier decision in *Fort Lauderdale Food Not Bombs*." 34 F.4th at 1212. According to the Eleventh Circuit in *NetChoice*, the focus is simply "whether the reasonable person would interpret it as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Id.* (quoting *Coral Ridge Ministries*, 6 F.4th at 1254).

Although the Eleventh Circuit concluded in *NetChoice* that social-media platforms' content-moderation conduct was expressive, it did not wade through the various *Burns* factors. *Id.* at 1210–14. Instead, the Court compared the relevant activity to the closest analogous cases—*Hurley* and its predecessors—and decided that the conduct at issue was expressive without evaluating any other "factors." *Id.*

Here, the *NetChoice* approach of focusing on the "reasonable person" standard also confirms that Plaintiffs' conduct is not expressive. No reasonable person would perceive any "sort of message" merely from receiving an unsolicited, prefilled, or duplicate absentee-ballot application. This Court need look no further than the expressive and non-expressive conduct that the Eleventh Circuit distinguished in *Food Not Bombs*. *See* 901 F.3d at 1241 (walking, sitting down, and nudity vis-à-vis parades, a sit-in, and nude dancing). Standing alone, the acts of prefilling absentee-ballot applications and sending multiple applications to potential voters are not inherently

expressive and are more akin to "the physical activity of walking," not "the expressive conduct associated with a picket line or a parade." *Id.* No one needs to be told that a large group of people moving down the road is a parade or picket-line instead of a group out for a walk.

In contrast, no one here would discern any message from Plaintiffs' mere *conduct* in sending prefilled or duplicate absentee-ballot applications to potential voters, absent Plaintiffs' cover letter. Moreover, if Plaintiffs' conduct is expressive simply because someone might infer that Plaintiffs believe that the mailed document is important, that sets the bar so low that nearly *all* conduct would be deemed expressive. Indeed, as the Ninth Circuit explained, collecting ballots does not become expressive conduct simply because the *harvesters* believe "that voting is important." *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 392 (9th Cir. 2016). The fact that the collector perceives a value (or even a message) in her own conduct does not make that conduct expressive. So too here: The fact that Plaintiffs perceive value in their efforts to send absentee-ballot applications to certain groups of people does not make Plaintiffs' bare conduct inherently expressive. Expressive conduct requires a message that is conveyed to others, not just to oneself.

Rather, it is inescapable that any externally expressive message comes from Plaintiffs' cover letter accompanying the applications. And that is no doubt why Plaintiffs send cover letters with the absentee-ballot applications.

7

That fact brings Plaintiffs' conduct squarely within the Supreme Court's decision in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006), where the Court held that conduct that needs "explanatory speech" to convey its message is not "so inherently expressive" as to warrant First Amendment protections. *Id.* at 66. That is not to say that inherently expressive conduct loses its expressive nature if it is also accompanied by other speech. *Food Not Bombs*, 901 F.3d at 1243–44. But this case is a far cry from an inherently expressive parade that also features paraders "carrying flags and banners with all sorts of messages." *Id.* at 1244 (quoting *Hurley*, 515 U.S. at 569). Here, Plaintiffs' conduct on its own does not convey any message. *See New Ga. Project v. Raffensperger*, 484 F. Supp. 3d 1265, 1300 (N.D. Ga. 2020) (neither collecting nor sending forms is expressive conduct), *stay granted on other grounds*, 976 F.3d 1278 (11th Cir. 2020) (collecting cases). And, as the Fifth Circuit confirms, "non-expressive conduct" in mailing forms "does not acquire First Amendment protection whenever it is combined with another activity that involves protected speech," like Plaintiffs' cover letters. *See Voting for Am., Inc. v. Steen*, 732 F.3d 382, 389, 392 (5th Cir. 2013).

## CONCLUSION

Whether or not the Court strictly applies the factors that the Eleventh Circuit discussed in *Burns* or *Food Not Bombs*, the record confirms that the reasonable viewer of Plaintiffs' conduct would not infer *any* message.

8

Otherwise, if silently mailing an absentee-ballot application were expressive conduct protected by the First Amendment, it is hard to imagine what conduct would *not* be considered expressive. The Court should reject such an expansive view of Plaintiffs' conduct and, in so doing, reject Plaintiffs' attempt to shoehorn their non-expressive conduct into the First Amendment.

Respectfully submitted this 3rd day of April 2024.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Erik S. Jaffe*
H. Christopher Bartolomucci*
Brian J. Field*
Edward H. Trent*
Justin A. Miller*
Miranda Cherkas Sherrill
Georgia Bar No. 327642
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Fax: (202) 776-0136
gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

9

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for State Defendants*

## **CERTIFICATE OF COMPLIANCE**

Under L.R. 7.1(D), the undersigned hereby certifies that the foregoing State Defendants' Supplemental Brief Regarding the Expressive Conduct Standard has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(C).

*/s/Gene C. Schaerr*
Gene C. Schaerr
