# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

VOTER PARTICIPATION CENTER, *et al.*,

        *Plaintiffs*,

   v.

BRAD RAFFENSPERGER, *in his official capacity as Secretary of State of the State of Georgia, et al.*,

        *Defendants*,

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

     *Intervenor-Defendants*.

No. 1:21-cv-1390-JPB

**INTERVENOR-DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs faced an uphill battle to show that their mailing of prefilled and duplicate ballot applications is expressive conduct. After all, "First Amendment protection" applies "only to conduct that is inherently expressive." *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006). Plaintiffs cannot make that showing unless they prove both that they intended to "convey a particularized message," *Texas v. Johnson*, 491 U.S. 397, 404 (1989), and that Plaintiffs must prove that a "reasonable person would interpret it as some sort of message." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (emphasis and citation omitted).

Plaintiffs' proposed findings of fact and conclusion of law confirm that they haven't gotten close to meeting that burden. In *Burns v. Town of Palm Beach*, the Eleventh Circuit distilled "five contextual factors" to guide that inquiry. 999 F.3d 1317, 1343 (11th Cir. 2021). This Court sent this case to trial because no party had addressed the application of those factors. Doc. 179 at 22. Plaintiffs' proposed findings of fact and conclusions of law illustrate that they have no argument under the *Burns* factors weigh in their favor. Instead, they only make a case by distorting each of those factors.

The Republican Intervenors join in the State Defendants objections to plaintiffs' proposed finding of fact and conclusions of law, and submit the below additional objections.

## OBJECTIONS

1.      Plaintiffs assert that the first *Burns* factor is whether the conduct "accompanies speech." Doc. 243 at 111, ¶29. But that is not correct. *Burns* explained that the first factor was that the group in *Food Not Bombs* "set up tables and its banner and distributed literature at its events." *Burns*, 999 F.3d at 1343. The key feature of these activities was not that they were "accompany[ing] speech," but that they showed that the conduct was part of a public display or presentation. This display helped "distinguish" the "sharing of food with the public" in *Food Not Bombs* "from relatives or friends simply eating together in the park." *Food Not Bombs*, 901 F.3d at 1243. *Burns* confirmed this by explaining that the homeowner there had "no plans to set up tables, distribute literature, or hang up a banner *in front of his new mansion*." *Burns*, 999 F.3d at 1344 (emphasis added). Other decisions have similarly recognized that

inherently expressive activities involve public display. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 504 (1969) (publicly displaying a black armband to school during the Vietnam War); *Spence v. Washington*, 418 U.S. 405, 410 (1974) (publicly displaying an American flag with a peace symbol taped over it by hanging it upside down out of an apartment); *Texas v. Johnson*, 491 U.S. at 404 (publicly burning an American flag).

    2.    Plaintiffs only argument that the first *Burns* factor weighs in their favor rests on this misunderstanding. They argue that their "cover letters" encouraging recipients to vote by mail. Doc. 243 at 111-12 ¶30. They never explain how the inclusion of this cover letter converts their mailing of prefilled and duplicate ballot applications into the kind of public display that courts have treated as expressive conduct. And their reliance on the content of the letter only confirms that their conduct is not expressive, since "[t]he fact that such explanatory speech is necessary is strong evidence that the conduct at issue … is not … inherently expressive." *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 66 (2006).

    3.    Plaintiffs also misapply the second *Burns* factor—whether the activity is "open to everyone." Doc. 243 at 114 ¶37. They argue that this factor is satisfied because other groups could send their own prefilled and duplicate to voters. But they offer no support for their position that conduct is "open to everyone" because others could separately engage in the same conduct. *Id*. at 114-16 ¶¶38-43. A cursory examination confirms that an activity does not meet the second *Burns* factor merely because others could also engage in the conduct—separately and privately. Instead, conduct satisfies the second *Burns* factor if

the Plaintiffs' own activity is open to the public. *Burns* confirmed this by explaining that the food-sharing events in *Food Not Bombs* were "open to the public" because "the group invited all present to share in the meal at the same time." *Burns* 999 F. 3d at 1343.  In contrast, the homeowner in *Burns* "offered no evidence that his house will be open to everyone or that he has invited the public to view his architectural design." *Id.* at 1344.

4.      Plaintiffs offer no support for their argument that the second *Burns* factor is satisfied any time that others could engage in the same activity. Nor do they offer any argument that their activity is "open to everyone" in the way that *Burns* discussed.

5.      Plaintiffs ignore Supreme Court precedent on the third *Burns* factor. This factor asks whether the activity took place in a traditional public forum. *Burns*, 999 F.3d at 1344. The Supreme Court has answered that question: the mail is not a public forum. *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 128 (1981) ("There is neither historical nor constitutional support for the characterization of a letterbox as a public forum."). Plaintiffs never address this precedent. Doc. 243 at 116-18 ¶¶44-50.

6.      Plaintiffs also misunderstand the fourth *Burns* factor—whether the activity addressed an issue of public concern. *Burns*, 999 F.3d at 1344. They argue that they satisfy this factor because "absentee voting in Georgia" is a matter of public dispute. Doc. 243 at 118 ¶52. But the fourth factor looks to whether the specific regulated activity addresses a matter of public concern. For example, *Burns* found that "residential midcentury modern architecture" was not a "public concern." *Burns*, 999 F.3d at 1344. That standard cannot be

met by Plaintiffs' mere citation that absentee voting is a matter of public concern. And Plaintiffs make no attempt to show that their mailing of prefilled and duplicate ballots addresses a matter of public concern.

7.    Plaintiffs also misstate the fifth Burns factor. The fifth *Burns* factor is whether the activity "has been understood to convey a message over the millennia." *Id.* at 1344-45. But Plaintiffs reduce this factor to "indicat[ing] that the history of a particular symbol or type of conduct is instructive." Doc. 243 at 119 ¶54. But the Eleventh Circuit has said that this factor looks for a particular history "stretching back millenia" that shows a connection between the regulated conduct and communication.

8.    Plaintiffs insist that the fifth factor is satisfied because the mail has been used to send communication in the past. Doc. 243 at 119 ¶¶55-60. But that is not the question set out by *Burns*. *Burns* demands that the specific regulated conduct must have a long tradition of being understood to convey a message. Thus, even though architecture had long been used to communicate, the fifth factor was not satisfied without evidence that "*residential* architecture, specifically, has a historical association with communicative elements that would put a reasonable observer on notice of a message." *Id.* at 1345. Under this standard, the fact that others have long used the mail to communicate is not relevant. Plaintiffs have not shown that the mailing of prefilled and duplicate ballot applications has long been understood to convey a message.

9.    Looking past the *Burns* factors, Plaintiffs insist that their mailing of prefilled and duplicate ballot applications must be expressive conduct because some voters "applied to use applications they received from Plaintiffs."

Doc. 243 at 121 ¶63. But Plaintiffs themselves explain why the use of prefilled and duplicate applications does not indicate that a recipient understood and agreed with their message. They explain that their mailing of prefilled and duplicate ballots "reduces the transaction costs of voting." Doc. 243 at 67 ¶209. This reduction in transaction costs makes it more likely that potential voters will engage in behavior that they "have an underlying latent propensity to engage in" by voting absentee. *Id.* at 66 ¶207. Thus, in Plaintiffs' own account, their conduct of sending prefilled and duplicate ballot applications is effective because it makes it easier for recipients to follow through on their latent propensity, not because they are persuaded by a message inferred from the sending of prefilled and duplicate ballot applications.

10.    Plaintiffs also try to turn their need for explanatory words into a benefit by arguing that their prefilled and duplicate ballot applications must be speech because they are "intertwined" with the message in the cover letter and other parts of their mailers. Doc. 243 at 107 ¶16, 114 ¶36. They even suggest that they should win for this reason alone because courts should not "separate the component parts of" speech. *Id.* at 107 ¶15. But this argument misses the point. The cases addressing component parts of "inextricably intertwined" speech concern how to categorize something that is indisputably speech, not whether an activity is expressive conduct or speech at all. *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796 (1988). For example, *Riley* explained that the "component parts of a single speech" could not be divided between commercial and fully protected speech, "applying one test to one phrase and another test to another phrase." *Id.*; *see also Village of*

*Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980) (explaining that solicitation should not be treated as "purely commercial speech" when accompanied by other forms of advocacy). This guidance on how to classify speech says nothing about whether to treat conduct as expressive in the first place. When addressing that question, the Supreme Court has been clear that reliance on intertwined speech weighs against a finding that conduct is expressive. *See FAIR*, 547 U.S. at 66. After all, the alternative rule would mean that "a regulated party could always transform conduct into 'speech' simply by talking about it." *Id.*

## CONCLUSION

This Court should reject Plaintiffs' proposed findings of fact and conclusions of law and enter judgment in favor of Defendants.

Respectfully submitted,

/s/ *Baxter D. Drennon*

Gilbert C. Dickey*                                    John E. Hall, Jr.
Conor D. Woodfin*                                    Georgia Bar No. 319090
CONSOVOY MCCARTHY PLLC                       William Bradley Carver, Sr.
1600 Wilson Boulevard, Suite 700                 Georgia Bar No. 115529
Arlington, Virginia 22209                          Baxter D. Drennon
(703) 243-9423                                        Georgia Bar No. 241446
                                                     HALL BOOTH SMITH, P.C.
Tyler R. Green*                                      191 Peachtree Street NE, Suite 2900
CONSOVOY MCCARTHY PLLC                       Atlanta, Georgia 30303
222 S. Main Street, 5th Floor                      (404) 954-5000
Salt Lake City, UT 84101                            (404) 954-5020 (Fax)
(703) 243-9423

*admitted pro hac vice

*Counsel for Intervenor-Defendants*

8

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

/s/ *Baxter D. Drennon*

## CERTIFICATE OF SERVICE

On June 14, 2024, I e-filed this document on ECF, which will email everyone requiring service.

/s/ *Baxter D. Drennon*