IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| VOTER PARTICIPATION CENTER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Secretary of State for the State of Georgia, *et al.*, <br><br> *Defendants*, <br><br> REPUBLICAN NATIONAL COMMITTEE, *et al.*, <br><br> *Intervenor-Defendants*. | Civil Action No.: 1:21-CV-1390-JPB |

**STATE DEFENDANTS' RESPONSE TO
PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

State Defendants respectfully submit this response to Plaintiffs' Notice of Supplemental Authority, which discusses the recent district court decision in *VoteAmerica v. Schwab*, No. 21-cv-2253, 2025 WL 1837262 (D. Kan. July 3, 2025). *See* [Doc. 260]. Although that district court invalidated a Kansas law that prohibited the mailing of prefilled absentee-ballot applications, its reasoning does not suggest the same result should occur here for Georgia's Prefilling Prohibition. Rather, as State Defendants explained previously, the

Tenth Circuit's earlier decision in the *VoteAmerica* case confirms that the Court should enter judgment here in favor of State Defendants. *See* [Doc. 258]. Nothing about this recent district court decision changes that fact.

1. As State Defendants previously showed, the Tenth Circuit correctly rejected the argument that absentee-ballot applications and accompanying cover letters were a "unified package" of core political speech. *VoteAmerica v. Schwab*, 121 F.4th 822, 835 (10th Cir. 2024). Rather, as the Tenth Circuit explained, it could not "see how enclosure of a prefilled application was inextricably tied to the cover letter in the mailing[.]" *Id.* at 836. So too here, for the reasons State Defendants explained previously. *See* [Doc. 258 at 3].

The Tenth Circuit also held that intermediate scrutiny applied to the challenge to Kansas's prefilling restriction because it was "among the narrow group of content-based but viewpoint-neutral regulations subject only to intermediate scrutiny." *Id.* at 848. The same conclusion follows in this Circuit with respect to Georgia's Prefilling Prohibition. *See* [Doc. 258 at 5]; *accord Wacko's Too, Inc. v. City of Jacksonville*, 134 F.4th 1178, 1186–88 (11th Cir. 2025); *McDonough v. Garcia*, 116 F.4th 1319, 1329 (11th Cir. 2024) (en banc).

2. On remand, however, the Kansas district court grabbed hold of a passing parenthetical in the Tenth Circuit's decision and used it as a basis to once again apply strict scrutiny. Specifically, the Tenth Circuit had explained

2

"the threat to free speech posed by the [prefilling] Prohibition is sufficiently small that (absent evidence that it was enacted for an improper purpose or justification) adequate protection is provided by intermediate scrutiny." 121 F.4th at 850. Thus, the Tenth Circuit explained, the challenged "restrictions should be analyzed under intermediate scrutiny." *Id*. at 827.

Rather than follow the Tenth Circuit's direction, the district court undertook a quest to find an "improper purpose" that would allow it to again apply strict scrutiny. On remand, the district court concluded that "mail-in voting had become one of several scapegoats for the alleged 'stealing' of the 2020 presidential election." 2025 WL 1837262, at *12. After citing Donald Trump's nationwide lawsuits challenging the 2020 election and his statements on January 6, 2021, the district court concluded that Kansas's justifications for its prefilling restriction "as a whole are not implausible, but … are not more credible than plaintiff's position that the legislature … enacted [the law] to suppress speech which favors voting by mail." *Id*. at *11–13. Given that finding, the district court applied strict scrutiny and invalidated Kansas's prefilling restriction.

Putting aside whether the district court faithfully followed the Tenth Circuit's guidance on remand, the Kansas district court's reasoning is irrelevant to the trial record here. Plaintiffs here never asserted that President Trump's allegations of voter fraud influenced the Georgia General Assembly's

3

enactment of the Prefilling Prohibition. And Plaintiffs did not introduce evidence at trial showing such an improper purpose. Quite the opposite—Plaintiffs presented evidence showing that the Republican National Committee also sent prefilled applications that are now subject to the Prefilling Prohibition. [Doc. 243 at 36, 81]. And, when arguing that strict scrutiny should apply, Plaintiffs instead argued that Georgia's Prefilling Prohibition restricts viewpoint-based and core political speech. *Id.* at 122–28. On that point, the Kansas district court's decision is silent.

3. Given these differences, the trial record here supports judgment in State Defendants' favor, and the Kansas district court's decision does not suggest otherwise. Contrary to Plaintiffs' assertion, [Doc. 260 at 5], the trial record here shows that prefilled applications *and* duplicate applications increased the burden on election administration and public perception that voter fraud plagued Georgia elections. [Doc. 244 ¶¶ 144–53, 161–66, 168–89]. And the related voter confusion and administrative burden significantly outweighed any alleged benefits to elections staff from prefilling—a benefit not shown in the trial record. *See* [Doc. 244 ¶¶ 178–79; Doc. 248 at 116–17]. Moreover, Plaintiffs' pointing to the lack of proven voter fraud does not show that the Georgia General Assembly had improper motives. Indeed, State Defendants explained that one basis for the Prefilling Prohibition was Georgians' documented fear of voter fraud, and State Defendants introduced

4

evidence connecting those concerns to an increased administrative burden. [Doc. 244 ¶¶ 144–45, 147, 150–51, 153, 165, 177, 184–85].

4. For these reasons, the Court should not apply the Kansas district court's reasoning. If any aspect of the *VoteAmerica* litigation is persuasive here, it is the Tenth Circuit's conclusion that intermediate scrutiny (at most) applies, and that cover letters sent along with absentee-ballot applications are not a single package of speech.

Here, State Defendants demonstrated at trial that Georgia's Prefilling Prohibition was not enacted to suppress Plaintiffs' speech but is narrowly tailored to the State's interests in preventing voter confusion, maintaining public confidence in the voting system, and decreasing administrative burdens.

Respectfully submitted this 1st day of August, 2025.

                                                Christopher M. Carr
                                                Attorney General
                                                Georgia Bar No. 112505
                                                Bryan K. Webb
                                                Deputy Attorney General
                                                Georgia Bar No. 743580
                                                Elizabeth T. Young
                                                Senior Assistant Attorney General
                                                Georgia Bar No. 707725
                                                STATE LAW DEPARTMENT
                                                40 Capitol Square, S.W.
                                                Atlanta, Georgia 30334

>*/s/ Gene C. Schaerr*
>Gene C. Schaerr*
>Erik S. Jaffe*
>H. Christopher Bartolomucci*
>Brian J. Field*
>Edward H. Trent*
>Justin A. Miller*
>Miranda Cherkas Sherrill
>Georgia Bar No. 327642
>SCHAERR | JAFFE LLP
>1717 K Street NW, Suite 900
>Washington, DC 20006
>Telephone: (202) 787-1060
>Fax: (202) 776-0136
>gschaerr@schaerr-jaffe.com
>*Admitted *pro hac vice*
>
>Bryan P. Tyson
>Special Assistant Attorney General
>Georgia Bar No. 515411
>btyson@clarkhill.com
>Bryan F. Jacoutot
>Georgia Bar No. 668272
>bjacoutot@clarkhill.com
>Diane Festin LaRoss
>Georgia Bar No. 430830
>dlaross@clarkhill.com
>**Clark Hill PLC**
>3630 Peachtree Road NE
>Suite 550
>Atlanta, Georgia 30326
>(678) 370-4377
>
>*Counsel for State Defendants*

6

## CERTIFICATE OF COMPLIANCE

Under L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(C).

*/s/ Gene C. Schaerr*
Gene C. Schaerr
